(No. 24924.—)

JOSEPH RUBIN *et al.* Appellees, *vs.* EDNA BARTEL *et al.* Appellants.

*Opinion filed February 15, 1939—Rehearing denied April 12, 1939.*

DESELM & SCHNEIDER, for appellants.

JACOB CANTLIN, and SAMUEL RUBIN, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Plaintiff, Joseph Rubin, (appellee here,) filed a suit for partition in the circuit court of Whiteside county, to parti-

tion certain property in the city of Rock Falls. The title to this property was acquired through foreclosure proceedings.

In 1925, the owner of the property executed a mortgage for $8200 securing eleven notes, and foreclosure proceedings were filed in May, 1933. The property was offered for sale by the master in chancery. Previous to the sale it was agreed among the owners of the notes that the property should be bid in by one of their number and title taken in him, as trustee. The plaintiff, Rubin, was selected as trustee to hold the title, and he bid the property in as trustee, and received the certificate upon which deed was issued by the master, in March, 1935. Immediately after the sale Rubin executed a declaration of trust which recited the names of the owners of the notes secured by the said mortgage and the amount of each of said notes, after which follows this recital: "Whereas, the undersigned, Joseph Rubin, this day purchased as trustee for and on behalf of all of the said parties, according to their respective interests, aforesaid property, and holds the title thereto in trust for them according to said interests as set forth in the decree of foreclosure, * * * it is hereby agreed by the undersigned that he holds said title for said parties in accordance with the proportions set forth in the decree entered in said case, and according to their interests therein set forth. * * * The undersigned agrees that the net proceeds from the sale of said property and from rentals thereof shall be paid over to said parties according to said respective shares hereinbefore set forth."

The parties to this appeal are interested as follows: Edna Bartel and Vera Bartel Schneider, 15/82; Joseph Rubin, 5/82; Joseph Rubin, as purchaser of the interest of J. Louise Palmer, 50/82; other parties not interested in this appeal own the remainder.

Rubin looked after the property, rented it, paid off delinquent taxes, and attempted to sell the property, and, at the time the suit was filed, had paid all back taxes and had

on hand $246.27. From time to time, when requested, he made accounts. Shortly before the filing of the partition suit Mrs. Palmer offered to sell her 50/82-interest, representing an original loan of $5000, to appellants for fifty-five cents on the dollar, and a few days later she sold it to the appellee, Rubin, for fifty cents on the dollar. Shortly after that, Rubin filed a suit for partition, making all interested parties, including himself, as trustee, defendants. An answer was filed denying the right to partition, and a counter-claim was filed against Rubin demanding an accounting and asking that he be removed as trustee. The lower court found that the plaintiff was entitled to partition and denied relief upon the counter-claim. Edna Bartel and Vera Bartel Schneider are the only ones to prosecute this appeal. The principal point involved in this appeal is whether the plaintiff must be the holder of a legal, as distinguished from an equitable, title to real estate, in order to maintain a suit for partition.

The declaration of trust sets forth the interests of the parties; it declares that the title is in the beneficiaries according to their respective interests; that the net proceeds from the sale and from rentals shall be paid over, and specifies that the interests of the parties are subject to unpaid expenses amounting to $133. No time is fixed within which a sale shall be made, and there is no express authority to make a sale and conveyance.

It is claimed by appellants that this declaration of trust created a conversion of the property from real estate into personal property because it is implied a sale must be made by the trustee from the use of the words "the net proceeds from sale of said property to be paid over according to the respective shares set forth." We do not believe the words used, nor the circumstances under which the declaration of trust was executed, manifest an intention to bring about a conversion. When the property was sold by the master, every one was bound to know there would be a certificate

of sale issued, which could not ripen into a deed until the period for redemption expired. During this time, the owner had a right to redeem, and, of course, the redemption money would be paid to plaintiff, as holder of the certificate, and he would divide the money amongst the several parties according to their respective interests. This money would be derived from the sale of the property; not a sale by the plaintiff, but from the foreclosure sale. The record also shows there was a receiver appointed to collect rents, and these rents were to be divided according to the respective interests. When the redemption period expired the title was vested in plaintiff, and the deed is made to Joseph Rubin, trustee, and if there was any authority upon his part from that time on to make a sale it must be implied, because it is not expressly granted. Certainly there was no power in the trustee to convey title to the lots until the deed was made by the master, but the declaration of trust speaks from the day it was executed. In order to effect a conversion of real estate into personal property there must be an imperative duty upon the part of the one holding title to make a sale. (*Haward* v. *Peavey*, 128 Ill. 430; *Vierieg* v. *Krehmke*, 293 id. 265; *Young* v. *Sinsabaugh*, 342 id. 82.) In the latter case we said: "In order to work a conversion while the property remains unchanged in form, there must be a clear and imperative direction to convert it. If the act of converting is left to the choice, option or discretion of the trustee, executor, or other fiduciary charged with making it, no equitable conversion will take place, because no duty to make the change rests upon him."

In our opinion no such imperative directions are here given, but rather it appears that by the recital in the first clause of the agreement the trustee was "to hold title for said parties, the proportion being fixed by their respective interests in the foreclosure decree." After thus reciting the interests, the further agreement that "the net proceeds from the sale and the rentals are to be likewise so divided"

could just as properly refer to money that might be paid to redeem the property and rents accrued as to money that might arise from a sale later on by the trustee.

An intention to convert must imperatively appear, and, therefore, if the document leaves the matter open to a construction which would not require the trustee to sell, there is no conversion, there being no duty and power to make a sale of the property at any and all times after the declaration of trust.

Partition suits may be maintained by parties who have only an equitable title to the real estate where the title is in a trustee, if no definite time has been set for a sale or for a termination of the trust. (*Ashton* v. *Macqueen,* 361 Ill. 132; *Berg* v. *Brown,* 342 id. 639; *Fox* v. *Fox,* 250 id. 384.) Since there was no time fixed for terminating the trust or for a sale, if such is implied, the plaintiff was entitled to partition.

Where parties have an equitable title that may be established by the court, and partition authorized in the same proceeding, sufficient facts should appear in the pleading to authorize the court to fix the interests of the parties or remove clouds, so when a division of the property is made, or a sale had, the title in the purchaser or owner becomes a legal one. *Kirk* v. *Kirk,* 325 Ill. 296, 306; *Harris* v. *Ingleside Building Corp.* 370 id. 617.

The prayer in the complaint to ascertain the interests of the parties, together with the written declaration of the trust contained in the answer, and the issues made by the parties, brought facts before the court sufficient to authorize a decree fixing their respective interests in the property and directing a partition or sale.

It is claimed that the declaration of trust did not embody all that was agreed upon in the conversation between the parties before the sale. If this conversation was competent to change or modify a declaration required by law to be in writing, it would not change the situation, for the

only evidence upon this subject was to the effect no time was fixed in which to find a buyer at private sale, and no statement was made about the length of time the property should be held, nor any definite amount fixed for which it should be sold.

In the cases cited by appellants upon the proposition that an active trust is created, express directions for sale, as well as management and distribution, are provided for, or a term fixed within which the trustee's duties must be performed. As pointed out above, there is no express provision for sale in the case before us, and the language from which a direction to sell might be implied can, also, be otherwise construed. There is nothing in those cases that conflicts with *Ashton* v. *Macqueen, supra,* and *Berg* v. *Brown, supra,* which were decided on facts quite similar to the ones under consideration.

Complaint is made that Rubin, as trustee, breached his duties in that, in the preliminary conversaton, he said he would charge nothing for his services. The owners of the majority in amount of the notes lived at a distance. Rubin's interest in the property was only $500. In reports, made later on, it appears that he credited himself with $2 per month, which appellants claim is a breach of agreement. Rubin claims this charge was made for expenses. It appears he had to keep books; he had to travel to the county seat to ascertain and settle current and delinquent taxes; he had to write letters to the different parties interested; had to have reports made up, and from the record it would appear that a charge of $2 per month would be a minimum to cover the actual out-of-pocket expenses of the trustee. We think this objection frivolous.

The objection is also raised that Rubin breached his trust in buying the interest of Mrs. Palmer. She owned 50/82 of the property; she wanted to sell her interest. It was offered to appellants shortly previous to the sale for fifty-five cents on the dollar; they did not accept the prop-

osition, but said they would confer with each other and let her representative know later. In the meantime Mrs. Palmer went to Rubin and she offered to take fifty cents on the dollar, which he agreed to and did pay out of his own funds. When the representative of appellants came to Rock Falls a day or two later he was advised by Rubin that he would turn the property over for what it cost, and appellants said they would be back later. It does not appear from the record appellants accepted either offer made by Mrs. Palmer or by Rubin. Rubin's testimony, which is not denied, his answer, and his brief filed in this court, show he had offered appellants the entire Palmer share, or their proportionate part thereof, for the price he had paid for the same.

We are unable to see how appellants were injured by this transaction, or where there was any breach upon the part of Rubin. Appellants have at all times had an opportunity to participate in the interest by merely paying the cost price, or their proportionate share thereof. If the property sells for less than the amount invested in it it is obvious that the parties will come nearer getting their money back if it is only necessary to realize $5700 instead of $8200. Nor is the fact that this particular share is held by Rubin instead of Mrs. Palmer, harmful to appellants, as she certainly had a right at any time, in case of sale, to combine with any other owner of notes in making a bid for the property.

The circumstances as shown by the record indicate that a sale is desirable. The property is an old hotel; it had no tenants at the time of the foreclosure; part of the roof is in bad shape permitting the rain to come through; in practically all of the rooms upstairs the paper is off of the walls; the windows are loose and some of them out; it has no toilet facilities, and the basement is full of debris, and untenantable. There is scarcely sufficient rent to pay the taxes and the insurance, leaving nothing for return upon

the capital investment. It has paid no interest for five years, and there is no prospect of its paying anything in the future. One of the best evidences of depreciation in the value of the property lies in the fact that the principal owner of the notes was willing to take fifty cents on the dollar, and appellants have manifested no inclination to participate in any investment upon the same basis.

These facts have no particular bearing upon the legal questions involved other than they justify the finding of the circuit court that there has been no unreasonable haste in bringing about a sale of the property. The testimony of the appellants and of Elizabeth Bartel indicate numerous attempts were made to sell without result.

The decree of the circuit court is affirmed.

*Decree affirmed.*