(No. 25968.—

IDA YEDOR, Appellee, *vs.* THE CHICAGO CITY BANK AND TRUST COMPANY *et al.* Appellants.

*Opinion filed February 18, 1941—Rehearing denied April 8, 1941.*

RATHJE, HINCKLEY, BARNARD & KULP, (FRANCIS E. HINCKLEY, of counsel,) for appellants.

BERNARD YEDOR, and CHARLES LIEBMAN, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The superior court of Cook county denied defendants' motion to dismiss the plaintiff's supplemental complaint, allowed the plaintiff's motion for judgment on the pleadings, and rendered a decree for partition of the real estate in question.

The pleadings and exhibits attached thereto show that August 15, 1926, Andrew Ringman and Hedvig Ringman conveyed the property involved in this partition suit, located at the southeast corner of Seventy-ninth street and Crandon avenue, in Chicago, to the Chicago City Bank and Trust Company, as trustee, to secure payment of one hundred ninety serial bonds which totalled $137,500. The first three to mature. totalled $1500 and were paid. The taxes were in arrears and default was made in payment of August 15,

1932. The owner, William E. Fisher, entered into a seven-year trust agreement on that date, known as trust No. 1090, with the assenting holders of bonds secured by the above trust deed, as parties of the second part, Robert Anderson, W. W. Beymer, William G. Donne, Charles Palmer, and Arthur Rathje, as parties of the third part, and the Chicago City Bank and Trust Company, Trustee, as party of the fourth part. In the agreement the bank agreed to act as trustee and Fisher agreed to and did convey the mortgaged property to the bank. The agreement provided that if all of the bondholders surrendered their bonds (which was done) they were to be canceled, and in lieu thereof one certificate for each $100 par value of the bonds was to be issued to the depositors. When issued these certificates were to contain *inter alia* the following provisions: "It is expressly agreed that the holder hereof has no right, title or interest, legal or equitable, in or to any of the property covered by or referred to in said trust agreement, but only an interest in the net income, proceeds and avails thereof" and that "by the acceptance of this certificate the holder hereof consents and agrees to be bound by all of the terms, provisions and conditions contained in said Trust Agreement." The trust agreement provided: "The interest of each and every Beneficiary hereunder shall be conclusively deemed and taken to be personal property, assignable and transferable as such, and no such Beneficiary shall have any interest in or right or title to any of the real estate herein concerned, either legal or equitable, but only such rights as may be given by the terms of this instrument to Beneficiaries as herein defined." The five parties of the third part, above named, were made a managing committee to serve without compensation. This committee was given "full and complete power and authority to direct the trustee in the control, operation, management, repair, maintenance, protection, leasing and sale of the real estate in this trust estate contained and to do any and all other

things required thereby or incident thereto." The trustee's compensation was to be two per cent of the money it received and disbursed. In consideration of Fisher's conveyance the trust agreement provided that Simon P. Lundquist should be given a five-year option in writing to buy the real estate. Article VIII of the trust agreement, entitled "Termination," provided that "The Trust created by this instrument shall, unless sooner terminated by the exercise of his option to purchase by the said Simon P. Lundquist, as above set forth, or by the conveyance of the premises by the Trustee pursuant to the direction of the Committee after the termination of said option, as is immediately hereinafter set forth, extend from August 15, 1932, until all of the assets of said Trust are disposed of and distributed as herein set forth. If, at the end of five (5) years from the date hereon, the said Simon P. Lundquist has not exercised his option to purchase, then the committee shall proceed to attempt to sell said premises and it shall have the right to direct the Trustee, at any time within one (1) year following the five-year period of said option, to contract for the sale of the real estate herein concerned to any purchaser for a purchase price of an amount sufficient to retire the certificates of beneficial interest then outstanding at a price of One Hundred Dollars ($100.00) per share of beneficial interest then evidenced by said certificates. The Trustee shall, at any time during the said one-year period, contract for such sale and shall, upon the direction of the Committee, sell and convey said real estate to any purchaser upon the payment of the purchase price above described, and, upon the receipt of such purchase price and such conveyance, the Trustee shall distribute the net proceeds of said sale to the Beneficiaries as their respective interest appear upon the presentment and surrender of their certificates of beneficial interest. * * * In the event the Committee and the Trustee do not secure such a purchaser within one (1) year from the expiration of

said five-year period, then the Trustee shall advertise said real estate for sale at public auction at the Chicago Real Estate Board Salesroom, in Chicago, Illinois. * * * The Committee or the Trustee shall also have the right to continue any sale so advertised if, in the discretion of either of them, such continuance seems advisable, from day to day or from time to time, each in all cases advising the other in writing of such continuance and the date and hour to which the sale has been continued; but such sale shall, in all events, be held not later than August 15, 1939, and neither the Committee nor any other person shall have any power to continue or postpone said sale beyond that date. * * * Upon the consummation of such sale and the distribution of said net proceeds thereof and net rents, issues and profits, as aforesaid, the Trustee shall cancel and retain all the certificates of beneficial interest and shall be released and discharged, and the Trust hereby created shall be at an end."

When all the bondholders had deposited their bonds with the bank the certificates were issued, the bank, as trustee, took possession of and managed the property and distributed the income to the certificate holders. Lundquist did not exercise his five-year option and the managing committee was not able to sell the property during the sixth year of the trust. The bank advertised that a sale of the property would be held on July 25, 1939, at 2:00 P. M. Its representatives attended the advertised sale, but no bid was obtained and the sale was postponed until August 15, 1939. A notice of this postponement was entered in the records at the office of the Chicago Real Estate Board where the sale was to have been held. On August 14, 1939, the bank, the managing committee established by trust No. 1090, assenting beneficiaries of trust No. 1090, and a certificate-holders' committee, composed of George O. Carlson, Howard C. Kingsbery, and Victor E. Ytterberg, executed a new trust agreement, a copy of which was

attached to the bank's answer and counter-claim. It will be noted that there remained only one day, August 15, 1939, to which date the sale mentioned above had been postponed within which the property could be sold by the bank as trustee under trust No. 1090. The new agreement purported to create trust No. 2738 which was to last for ten years. Under it all former certificate holders who assented to its terms were to deposit with the bank and were also to sell their certificates to Carlson, Kingsbery and Ytterberg, the certificate-holders' committee. This committee was to purchase the real estate from the bank and reconvey it in trust for the assenting certificate holders.

On August 15, 1939, representatives of the bank, as trustee, and of the managing committee provided for in trust No. 1090, appeared at the Chicago Real Estate Board's office where the sale was to be held. For want of a bid no sale resulted. All the certificate holders except the complainant, Ida Yedor, who held a certificate for five shares and A. Henry Goldstein who held one for fifteen shares, assented to the proposed new trust agreement and deposited their certificates with the bank.

On December 6, 1939, appellee filed a complaint which sought a disclosure of the parties in interest from the bank, as trustee, and prayed partition of the real estate. On the same day, after summons had been issued, appellee's solicitor appeared at a sale which the bank was about to make of the premises involved, and gave notice to its representative and the representative of Carlson, Kingsbery and Ytterberg, that this partition suit had been filed and summons had been issued. The bank's answer shows that it, in disregard of this notice, sold the premises for a nominal price of $13,600 and conveyed to Carlson, Kingsbery and Ytterberg who acted pursuant to the terms of the agreement in trust No. 2738. Immediately thereafter, these three men reconveyed to the bank, as trustee, under the last named trust.

In her original complaint, appellee stated she did not know the names, etc., of all the certificate holders of trust No. 1090, and she made such persons defendants as "Unknown Owners." On December 7, 1939, she petitioned the court that the bank be ordered to disclose the names and addresses of such unknown owners, and also the number of shares held by each of them. This petition was granted but the bank made a meager disclosure as follows:

"Comes now Chicago City Bank and Trust Company, defendant in this cause, and, pursuant to the order of this court entered on the 1st day of February, 1940, files herein the names and addresses of all the owners of certificates of beneficial interest under Trust No. 1090 and the amounts of the certificates of each, as follows:

"A. Henry Goldstein
One LaSalle Street Building          15 shares
Chicago, Illinois

Ida Yedor
7525 Essex Avenue          5 shares
Chicago, Illinois

"This defendant further states unto the court that all the other certificates of beneficial interest issued by it under said trust No. 1090 have been cancelled and surrendered."

On May 10, 1940, the plaintiff filed her supplemental complaint for partition, for removal of the trustee, and for an accounting. It averred that A. Henry Goldstein was the holder of an undivided 15/1360ths interest in the trust property, and that George O. Carlson, Howard C. Kingsbery, and Victor E. Ytterberg, the certificate committee named in trust No. 2738, were the owners of an undivided 1340/1360ths interest in the real estate.

By its answer the bank denied plaintiff's right to partition. It claimed she did not have legal or equitable title to the trust property, and that her interest was only in the income or proceeds arising from the sale or other disposition of the real estate. It also alleged that there was a widespread economic depression reducing real estate values, and that there was no market for the property from August

15, 1937, to August 15, 1939. By its counter-claim the bank asked the court to approve trust No. 2738, the sale and conveyances which had been made in order to effectuate that trust, and to compel the plaintiff to elect whether she would accept five shares in trust No. 2738 or $50 in cash. The other defendants adopted the bank's answer.

The defendants' motion to strike the supplemental complaint was overruled, and the court allowed the plaintiff's motion for judgment on the pleadings. By its decree ordering partition the court found the following persons entitled to interests in the property, in equity, in fee simple: the plaintiff, Ida Yedor, 5/1360ths; the defendant, A. Henry Goldstein, 15/1360ths, and the defendants, George O. Carlson, Howard C. Kingsbery, and Victor E. Ytterberg, the remaining 1340/1360ths. The defendants have appealed directly to this court from that decree because a freehold is involved. *Ashton* v. *Macqueen,* 361 Ill. 132.

The principal question involved is whether the chancellor ruled correctly on the motion for judgment. To entitle anyone interested in land to obtain a decree for partition, he must hold either in joint tenancy, tenancy in common or in coparceny, (Ill. Rev. Stat. 1939, chap. 106, par. 1,) but where a case is fairly brought within the law authorizing such a suit, partition is a matter of right and not one of grace. (*Murphy* v. *Murphy,* 343 Ill. 234; *Hill* v. *Reno,* 112 id. 154.) The motives which move a party to seek partition are immaterial. (*Trainor* v. *Greenough,* 145 Ill. 543.) The rule is well settled that in cases such as this partition is maintainable by the holder of an equitable estate as well as by the holder of a legal estate. Thus, the remedy is available to equitable owners where the title to real property is in a trustee and no definite time has been set for the sale of the property or the termination of the trust. *Hazlett* v. *Moore,* 372 Ill. 192.

The appellants contend that this rule is not applicable here for the reason that a definite time for sale was named

in the original trust agreement. They also say there was an equitable conversion present, and that appellee had no such interest in the real estate as would entitle her to partition. It is their contention that once she accepted the certificate of interest under trust No. 1090, she became an owner of personal property and she does not now own either a legal or equitable interest in real estate.

In *Friese* v. *Friese*, 373 Ill. 216, this court said: "Where the creator of a trust specifically fixes the duration of a trust, his directions will, if not in violation of the rule against perpetuities, be given effect. (*Kohtz* v. *Eldred*, 208 Ill. 60.) The Restatement of the Law of Trusts, volume 2, section 334, announces the rule applicable to the present factual situation: 'If by the terms of the trust the trust is to continue only until the expiration of a certain period or until the happening of a certain event, the trust will be terminated upon the expiration of the period or the happening of the event.'" These rules apply to the facts presented by this record. By its terms trust No. 1090 was to terminate on August 15, 1939. The provision was mandatory that the property must be sold by that day and no sale could be continued to or be made by a trustee at a later date. The language, as quoted above, is: "But such sale shall in all events, be held not later than August 15, 1939, and neither the Committee nor any other person shall have any power to continue or postpone said sale beyond that date." Therefore, appellee was entitled to partition after the designated date had been reached.

The cases relied on by appellants do not support their contentions because of the difference in both the factual and legal situations involved. For example *Kirkland* v. *Cox*, 94 Ill. 400, was an ejectment suit and the holding was correct that legal title was required to enable the trustees to carry out the terms of the trust and the intent of the testator. Therefore, his heirs could not maintain ejectment. The case of *Kathman* v. *Sheehan*, 332 Ill. 280, in-

volved a claim of dower in land held under an active trust. Also, in the deed of trust, the claimant had released his dower. In *Whitaker* v. *Scherrer,* 313 Ill. 473, partition was denied, but when that suit was brought the trust was still active and the parties had agreed not to partition the land involved. In *Aronson* v. *Olsen,* 348 Ill. 26, the interest of the beneficiaries was stated to be limited to the proceeds of the realty and that such interest was to be deemed personalty. In so far as that decision discloses, no time was fixed for the termination of the trust and no contention was advanced that the trust had terminated or · that there had been any unreasonable delay on the part of the trustee in selling the premises. Partition was denied for the reason plaintiff's interest was personal property and not an interest in real estate. On the other hand, it was held in *Rubin* v. *Bartel,* 371 Ill. 117, that where no imperative duty to sell was imposed on the trustee, no conversion of real estate into personal property resulted, and that the beneficiaries could maintain partition. To this same effect are *Ashton* v. *Macqueen, supra,* and *Berg* v. *Brown,* 342 Ill. 639.

In *Friese, v. Friese, supra,* the trial court ordered the issue as to partition held in abeyance, and this court affirmed the decree which compelled a conveyance from the trustee to the parties beneficially interested. In that case the trustee had power to sell and make distribution and the interests of the beneficiaries were expressly stated to be personal and not real property. The trust instrument expressly provided that the trust should terminate two years from the date of the death of the first beneficiary, Meta Friese Koch. This court recognized the fact that the parties who held the beneficial interest were the equitable owners of the real estate. If those beneficiaries had the equitable title in fee when that trust terminated, two years from the date of Meta Friese Koch's death, ·this appellee had an equitable interest in fee in the real estate here

involved when the trustee bank lost its power to sell. That interest entitled her to maintain this partition suit. The argument that there was present, here, an equitable conversion, would have been applicable if this suit had been brought within the seven-year period, which ended August 15, 1939. The doctrine of equitable conversion is only invoked to effectuate the intention of the settlor or testator. (*Young* v. *Sinsabaugh,* 342 Ill. 82; *Smith* v. *Smith,* 174 id. 52; 19 Am. Jur. (Equitable Conversion) secs. 4, 5.) Where the settlor's purpose fails, or does not take effect in fact or in law, the property is considered as remaining in its former condition. (*Smith* v. *Smith, supra.*) In the case before us the purpose was to sell this property within an absolute limit of seven years. That purpose failed and the trustee had no right to sell after that time. From and after August 15, 1939, the interest of the beneficiaries of the trust was an equitable interest in land and not personal property. They were then entitled to compel a conveyance to them from the trustee and they were not required to obtain a decree for such conveyance before filing suit for partition.

The supplemental complaint's allegation that there were breaches of trust is denied by appellants' answer and counter-claim. However, these latter pleadings indicate that the appellants knew that the bank's power to sell as trustee ended on August 15, 1939. This is fairly inferred from the fact that they attempted to create a new trust (trust No. 2738) on August 14, 1939, and the sale, conveyance and reconveyance to the bank on or about December 6, 1939. They had no power to compel appellee to either enter into a new trust agreement, to accept a new certificate for five shares or to accept ten cents on the dollar. The bank's authority had ended and whether it can be said that there can be a breach of a terminated trust, the agreement dated August 14, 1939, and the subsequent sale, conveyance and reconveyance, were void.

There is no force in appellants' argument that the decree was erroneous because the chancellor failed to find correctly the respective interests in the land held by the defendants other than Goldstein. It is the duty of all the parties to a partition suit to disclose their interests in the land. (*Chapman* v. *Chapman,* 256 Ill. 593.) The appellants alleged specifically that Carlson, Kingsbery and Ytterberg bought the remaining shares evidenced by the certificates issued under trust No. 1090 and the decree conforms to this allegation. They are, therefore, in no position to complain.

No defenses were presented by the answers of the appellants and, for the reasons stated, the ruling of the chancellor on the motion for judgment on the pleadings, was correct.

The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*