HAUSER et al. v. CATLETT et al.

No. 32110.   Oct. 8, 1946.

Rehearing Denied Nov. 12, 1946.

*173 P. 2d 728.*

C. H. Rosenstein and A. B. Honnold, both of Tulsa, for defendants in error.

RILEY, J. On September 19, 1925, there was executed a declaration of trust whereby the Greer Investment Company transferred and assigned to F. H. Greer, L. L. Greer, and J. A. Ruffer, trustees, the sum of $5,000 in trust, with power to invest the trust funds for the operation of the business and owning, buying, selling, and acquiring oil and gas royalties, developed and undeveloped. The trust was designated as the Petroleum Royalties Company. The trust was then capitalized in the sum of $2,000,000; the shares divided into 1,000,000 preferred of the par value of $1.00 and 1,000,000 common shares of the par value of $1.00 each. The term of the trust was fixed for a period of 20 years with the provision that the trustees might, at their discretion, terminate the trust by converting the assets into cash and make division among the shareholders. A later amendment provided for 5,000,000 preferred shares of the par value of $1.00 each and 1,000,000 common shares.

The 29th paragraph of the declaration of trust provides:

"Should it seem judicious to the Trustees so to do, they may, at their discretion, convey the Trust Fund and other assets to Trustees of a new trust or to a corporation, being first duly indemnified for any outstanding obligations or liabilities. In such event the new Trustees, should conveyances be made to Trustees, or the corporation, should transfer be made to a corporation, shall succeed to all the powers conveyed by this Trust."

At all times the declaration contained a provision limiting the term of the trust to 20 years.

In March, 1944, the trustees were J. G. Catlett, R. R. Hays, and W. F. Catlett. At that time there were 2,187,-740 preferred shares outstanding, owned by 1,861 shareholders. There were no outstanding common shares.

About January, 1944, the trustees, in view of the approach of the end of the trust period, determined that it would be judicious to convey the trust funds and all other assets of the trust to a new trust of like character with like powers. Accordingly, a declaration of trust, dated January 26, 1944, was executed between J. G. Catlett, grantor, and J. G. Catlett, R. R. Hays, and W. F. Catlett, trustees, designating the new trust as "Petroleum Royalties, Limited". The new declaration of trust was similar to the one previously existing except that it did not provide for any common shares and the capitalization was limited to 5,000,000 shares of the value of $1.00 each. The plan was to transfer all the funds and property of Petroleum Royalties Company to the new trust, Petroleum Royalties, Limited, and to exchange, share for share, the shares of Petroleum Royalties Company for shares in Petroleum Royalties, Limited. All the shareholders were advised.

The trustees were apparently doubtful of their power, so on March 6, 1944, they commenced this action wherein all the other 1,858 shareholders in Petroleum Royalties Company were made defendants. They pleaded the terms of the 29th paragraph of the old declaration of trust, alleged it to be judicious to convey the trust funds and assets to the new trustees. They prayed to be advised concerning their powers, duties, and obligations.

Henry L. Fist, Joe N. Shidler, and Everett S. Johnson, Jr., applied to be appointed as a "Shareholders' Protec-

tive Committee"; they were owners of a substantial number of shares in Petroleum Royalties Company. They sought to represent all other shareholders and to employ counsel. The court made the appointment and A. B. Honnold, attorney, was employed. The committee favored the proposed plan.

Susie Wade, Bertha E. Booth, and Cora Sumner, shareholders, answered and cross-petitioned. They acted for themselves and in behalf of all others similarly situated. They relied upon terms of the trust and denied continuance of trust authority beyond the 20-year period. They objected to authorization of the transfer. By cross-petition they sought an accounting.

Defendants W. M. Hauser, Herman F. Petrie, Charles Gardiner, Emma Cobb, J. H. Dalby, and A. Maude Rochford, shareholders, answered and requested approval of the plan upon submission of it to each beneficial certificate holder whereby the shareholders might indicate preference for: first, sale of all assets and division of the proceeds; second, extension of the trust fund for a period of 20 years; third, organization of a corporation and transfer of the assets of the trust to such corporation. These defendants objected to the extension of the trust agreement. The answer of all objecting shareholders was finally amended so as to challenge the powers of the trustees or the court to authorize the transfer of the assets.

The court found it was for the best interest of the owners of all interests in the Petroleum Royalties Company that the trust be continued and not terminated on September 19, 1945; that the declaration of trust authorized the trustees to convey the trust funds and assets to the trustees of the new trust, Petroleum Royalties, Limited. The court found it unnecessary that the owners of shares of Petroleum Royalties Company exchange their respective certificates but that such certificates should, from and after the date of such transfer, represent evidence of ownership of the same number of shares or bene-

ficial interests in the new trust known as Petroleum Royalties, Limited. The decree was entered accordingly.

Costs, attorneys' fees, and other expenses were allowed in the following amounts: Plaintiffs' attorney fee, $2,500, attorney fee for the Shareholders' Protective Committee, $1,500, Committee costs, $1,000, expenses incurred, $159.34, all to be paid out of the assets of the Petroleum Royalties Company either before or after the transfer of the assets to Petroleum Royalties, Limited.

The principal question is whether a court of equity has the power to authorize the trustees of an express trust, organized under the provisions of 60 O.S. 1941 §§171 to 174, inclusive, when the term for which the trust was organized is about to expire, to transfer the trust funds and all other assets to a new trust of the same nature and with same powers, and compel objecting shareholders in the first trust to accept shares in the new trust or automatically become shareholders for an extended period of time.

An incidental question of allowance of attorneys' fees, costs, and expenses is presented.

In the absence of prohibitive or controlling statutes, business trusts of the character of the one here involved, sometimes referred to as a "Massachusetts Trust", which carry on a business for profit in the interest and for the benefit of the shareholders, are, generally speaking, legal and valid and not against public policy. 9 Am. Jur. 296. Under a minority view, business trusts have been held to be generally invalid, at least to the extent of rendering invalid any attempted immunity from personal liability. But, in Oklahoma, under provisions of 60 O.S. 1941 §171, business or express trusts in real or personal property, or both, are expressly authorized to conduct any lawful business and generally to do any lawful act in relation to such trust property which an individual owner might do. Sec. 172 provides that no such express trust shall be valid un-

less created, first, by a written instrument subscribed by the grantor, or, second, by will duly executed as required by the laws of the state. Such express trusts shall be limited in duration to a definite period not to exceed 21 years, or to a period of the life or lives of the beneficiary or beneficiaries thereof. "The instrument creating the trust shall specify the period of duration thereof within the limitations herein provided".

The duration of trust creating the Petroleum Royalties Company conforms strictly to the statutory requirements. But by the provisions of the declaration, authority was vested in the trustees to transfer all the trust funds and other assets of the trust to a new trust or to a corporation.

The trustees, in view of the approaching end of the term for which the trust was limited, declared that they deemed it judicious to create a new trust for a period of 21 years, with the same trustees, for the same purposes and with the same powers, and to transfer all the trust funds and assets of Petroleum Royalties Company to the new trust.

The question of the power of the trustees to transfer the trust funds and other assets of the same trust to a corporation has been before the federal court in the U. S. District Court for the Northern District of Oklahoma, Booth et al. v. Greer Investment Co., 52 Fed. 2d 857, and in the Circuit Court of Appeals for the 10th Circuit, Greer Investment Co. et al. v. Booth et al., 62 Fed. 2d 321.

In that case, F. H. Greer, L. L. Greer, and J. A. Ruffner, the original trustees, acting under the purported power to convey the trust funds and assets of the trust to a corporation, organized for that purpose, conveyed all the royalty interests, property, and assets of the trust estate to the corporation. Action was commenced in the state court by T. J. Booth et al., as shareholders, to cancel and set aside the conveyance, and for an accounting. The action was removed to the U. S. District Court for the Northern District of Oklahoma. Judge Kennamer, in his decision, stated:

"It is very plain that the trustees were to engage exclusively in the royalty business for the benefit of the trust estate, and, while paragraph 25 lends some color to the contention made that the trustees were authorized to transfer the assets of the trust estate to a corporation, I am of the opinion that the trustees were without authority to transfer the assets of the trust to a corporation, except for one purpose; and that was to one with only the limited powers to perform the duties of the trustees of the trust. The transfer as made to Petroleum Royalties Company, of Oklahoma, a Delaware corporation, with general powers under its charter to engage generally in the oil business, violates the provisions of paragraphs 6 of said articles of trust agreement.

"I am clearly of the opinion that under the articles of trust agreement the trustees were without power to terminate the trust by organizing a corporation and transferring all of the assets of the trust estate to the corporation, without the consent of the shareholders of the trust."

The transfer and conveyance was set aside. Booth et al. v. Greer Investment Co. et al., supra.

The Greer Investment Company appealed to the Circuit Court of Appeals. It was there held that the declaration of trust authorized the trustees to transfer all the trust property to a corporation for cash, or that the trustees might transfer the trust funds to a new trust or to a corporation, but the declaration of trust expressly provided that the new trustees or corporation, as the case might be, should succeed to all the powers conveyed by the declaration of trust. The court said:

"We are of the opinion that the intent of this language is that a conveyance to a corporation, other than for cash, must be made to it as trustee, and that the corporation shall exercise the powers of the trustee under the declaration of trust . . . The transfer and exchange of stock in the instant case terminated the Trust by dividing the

trust assets, viz., the stock it acquired in the Corporation, among its shareholders. The action of the trustees did not convert the Trust property into cash, as required by section 25. It arranged for the distribution, not of cash, but of stock in the Corporation. Had the transfer been to a corporation as trustee to act as trustee under the declaration of trust, there would have been no termination of the trust and no violation of such provisions of section 25. In order to comply with section 25, the transfer would have had to be to the Corporation for cash, or to the Corporation as trustee. It seems clear, therefore, that there was no authority to transfer the assets of the Trust to the Corporation in exchange for stock."

This could mean nothing less than in case of transfer to a corporation, other than for cash, the corporation could act only as trustee under the provisions of the declaration of trust, limited to the period specified in the instrument creating the trust, that is, 20 years from September 19, 1925. The same reasoning would compel the conclusion that should the transfer be to a new trust, with the same trustees vested with the same powers, the trustees of the new trust could act with reference to the trust property for and only during that period of time fixed in the original declaration of trust.

Defendants in error rely upon certain statements of Judge Kennamer and Judge Murrah in Hamrick et al. v. Bryan et al., 21 Fed. Supp. 392, wherein it was held that under a declaration of business trust to continue 20 years and lives in being and wherein the trustees had power of amendment, the trust could be amended to enlarge time of duration notwithstanding the statute authorizing the formation of such trust for a period not to exceed 21 years or to a period of the life of the beneficiary. In support thereof, 6 O. S. A. §295 and 18 O. S. A. §1 are cited.

6 O. S. A. §295 relates to additional powers conferred on trust companies as created under the provisions of 6 O. S. A. §§291, 292, 293 and 294. Subdivision 3 of sec. 295 expressly provides that "No provisions of any law heretofore or hereafter adopted, relating to *express trusts,* shall ever apply to the corporations incorporated under the provisions of this chapter unless made specifically applicable thereto." 18 O. S. A. §1 relates wholly to corporations and has no application to business trusts.

Defendants in error assert that although Hamrick v. Bryan was appealed to the Circuit Court of Appeals, Bryan v. Hamrick, 106 Fed. 2d 245, the opinion was modified but not as to certain statements therein, namely:

"Because this is a business trust, and by reason of terms of the Oklahoma statute (6 Okla. St. Ann. §295) authorizing the formation of such trusts for a period of 'not to exceed twenty-one (21) years, or to the period of the life or lives of the beneficiary or beneficiaries thereof', which when reasonably construed should permit an enlargement of the time of duration by further amendment of the trust agreement, we cannot agree with the contentions of defendants that an imperative obligation to liquidate the trust assests by December 1, 1940, was imposed upon the trustees. . . .

"Furthermore, we think the cited Oklahoma statute was never intended to compel, and does not compel, a sacrifice liquidation of a business trust at the end of the period for which it may be formed. Sound reason is against such a construction of the statute. Under the express provisions of the Oklahoma statutes (18 Okla. St. Ann. §1), a corporation organized for a limited term of years may renew its charter for a like term. In the absence of an express statutory prohibition, it occurs to us that, for the better preservation of the values of properties acquired by cestui que trustent through the organization of a business trust of such a character as the Imperial, it is more in consonance with fair and just legislative policy and intent to read from the statute the right to properly avoid forced sale loss by a conveyance to a new trust agency with the same powers of the old and with a period of duration conforming to the statutory requirements."

This apparently was the view of the trial court, although there was no find-

ing that there would be any sacrifice of values by sale of the assets of the trust or liquidation at or before the end of the trust period.

In Hamrick v. Bryan, supra, the United States District Court disapproved the plan of the trustees of Imperial Royalties Company in fixing the liquidation value of the assets of the trust at $582,768, as appraised by a petroleum engineer, when it appeared that the same engineer who made such appraisal placed a value on the assets of $1,007,127 on a going concern basis. But the Circuit Court of Appeals approved that method of fixing the liquidation value of the assets.

Defendants in error assert that the final decree of the Circuit Court of Appeals in Bryan v. Hamrick, supra, is authority for and supports the decree of the trial court in that it finally held the plan of the trustees of Imperial free from objection on condition that the articles of incorporation of the Toklan Royalty Corporation be amended so as to limit the powers and objects of the corporation to substantially the same as the objects of the trust and the powers of the trustees.

We do not agree. A business trust is a sort of hybrid form of organization, partaking in some respects the nature of a corporation and in other respects that of a partnership. Ordinarily a business trust differs from the corporation in that the trustees are given full power to conduct the business and affairs of the trust, free from interference from the individual shareholders. In the instant case, the shareholders, as such, had no voice whatever in the conduct of the business.

Any corporation chartered for a fixed term of years under the laws of this state may renew its charter and extend the time of its existence for a period not exceeding 20 years at any one time, by filing amended articles of incorporation. 18 O. S. A. §1. Every corporation must adopt a code of by-laws for its government. Such by-laws may provide the time and manner of calling and conducting its meetings, the number of shareholders or members constituting a quorum, the mode of voting by proxy, and the time for the annual election of directors, and the mode and manner of giving notice thereof. Directors must be elected annually. Generally, the majority stockholders of a corporation have control of its management. They may determine whether its charter shall be renewed and whether the time of its existence shall be extended within statutory limitations.

There is no such provision with reference to business trusts. Shareholders have no such powers. The law does not specifically provide for the extension of its life. Once a person invests his money in shares of the trust, he has no voice in the matter of how the business is to be conducted. He has no voice in the election of the trustees. No meetings, annual or otherwise, of the shareholders are required by statute. An individual shareholder has no power to sue for liquidation of the trust. His money must remain in the trust for the period fixed unless the trustees see fit to terminate the trust.

In Bryan v. Hamrick, supra, some of the shareholders suggested that the trust could be indefinitely continued for 20 or even 21 year periods by simply amending the declaration and having the trustees convey all the trust estates to new trustees. But Judge Lewis, in the first majority opinion, said "that would be a clear attempt to circumvent the statute."

Here it was proposed, not to amend the declaration of Petroleum Royalties Company and have the trustees convey all the trust estate to the new trustees, but to create a new trust under the name of Petroleum Royalties, Limited, to the same persons who were trustees of the Petroleum Royalties Company as trustees of the new trust and have them convey all the assets of Petroleum Royalties Company to themselves as trustees of Petroleum Royalties, Limited and thus force all shareholders in Petroleum Royalties Company to be-

come shareholders in Petroleum Royalties, Limited. The trial court approved this, finding that even though the dissenting shareholders would not surrender their certificates in the old trust for certificates in the new trust, nevertheless their old certificates would be evidence of their ownership of a like number of beneficial interests in the new trust. Bryan v. Hamrick, supra, does not support such power. The court therein pointed out that the plan as explained to the shareholders in a circular letter was:

" . . . evolved by the trustees of Imperial Royalties Company, for the purpose of giving effect to the expressed desire of a substantial proportion of the beneficial interest shareholders of the trust estate for the prepetuation of its business beyond the term fixed by the provisions of the declaration of trust, through reorganization in corporate form. *Provisions have been embodied therein which will protect the rights of those electing to be paid in cash, their distributive share of the value of the trust assets.*"

Mr. Bryan, one of the trustees therein, testified:

" . . . that arrangement had been made in New York to pay any and every shareholder in the trust estate his proportionate share of the appraised value, $582,768, in cash if he should not desire to subscribe for stock in the corporation".

That plan was approved by the court on condition of amendments to the charter of Toklan Royalty Corporation. Thereby, every shareholder who did not desire to subscribe for stock in the corporation could at, his election, be paid his proportionate share of the appraised value of the assets of the trust. The plan proposed by the trustees in the instant case and approved and enforced by the decree of the trial court had no such provision. There was no appraisement by a competent petroleum engineer or other qualified person, of the value of the assets of Petroleum Royalties Company. There was no evidence by which the trial court could determine the value of such assets. None of the witnesses ventured an opinion of value.

The only evidence reflecting anything as to the value of such assets was a financial statement of Petroleum Royalties Company, dated December 31, 1943, prepared by an auditor employed by the trustees. It showed the "book value" of the assets of the trust as of that date to be approximately $343,896.15 including unencumbered cash in hand in the amount of $50,052.46. This court cannot say this stockholders' equity value as shown represents the true cash value of the assets of Petroleum Royalties Company. If it represents anything near the actual value, there was ample cash on hand to pay all the objecting shareholders their proportionate share of the actual value of the assets of the trust. The record shows that there were outstanding 2,187,740 preferred beneficial interests or shares of the par value of $1.00 each and no outstanding common shares. Of the total number of outstanding preferred shares, all the objecting shareholders together owned only 51,750 shares, slightly more than 2.32 per cent. Assuming that the net value of the assets of the trust estate was $343,896.15, the value of all the interests of all the objecting shareholders would be slightly in excess of $7,976. The unencumbered cash on hand would have permitted paying in cash to all the objecting shareholders of their proportionate share of the value of the assets and left about $42,000 cash. The sale, sacrifice or otherwise, of any of the royalty interests held by the trust would be unnecessary.

An organization such as Petroleum Royalties Company, "being a trust, is subject to the same principles of law in determining the rights of trustees. cestuis que trust, creditors of the trust and others who deal with the trust as trusts which are older and historically traditional. The making of a new use of a trust does not require the application of new principles in determining these rights." 9 Am. Jur. 288.

Generally, "If by the term of the trust, the trust is to continue only until the expiration of a certain period or until the happening of a certain event, the trust will be terminated upon the expiration of the period or the happening of the event." Restatement of the Law of Trusts, § 334, p. 1011. See, also, Scott on Trusts, vol. §334; Bogert on Trusts, vol. 4, § 991; Friese et al. v. Friese et al., 373 Ill. 216, 25 N. E. 2d 788.

A similar question was presented in Yedor v. Chicago City Bank & Trust Co., 376 Ill. 121, 33 N. E. 2d 220. There, a business trust known as Trust No. 1090, was created August 15, 1932, to run, in no event, beyond August 15, 1939. On August 14, 1939, one day before the trust was to expire, the trustees, a managing committee established by the Trust No. 1090, assenting beneficiaries, and a certificate holders' committee, executed a new trust agreement purporting to create Trust No. 2738, to last for 10 year, under which former certificate holders who assented were to deposit with the bank and sell to the certificate holders' committee their certificates in Trust No. 1090. The committee was to purchase the real estate comprising the assets of Trust No. 1090 and reconvey it in trust for the assenting certificate holders. All the certificate holders except two, one of whom held a certificate for 5 shares and the other for 15 shares (out of a total of 1,360 shares), assented to the proposition and deposited their certificates. December 6, 1939, Ida Yedor, who held the certificate for 5 shares, filed an action which sought disclosure of interests from the bank as trustees and prayed partition of the real estate. Notwithstanding this action and notice thereof, the bank, as trustee, conveyed the property to the shareholders' committee for a nominal price of $13,600, which represented the 1,360 beneficial certificates at the par value of $100 each, which committee acted pursuant to the agreement in Trust No. 2738. Immediately thereafter they reconveyed to the bank, as trustee, under the last-named trust.

By plea in counterclaim, the bank asked the court to approve Trust No. 2738, the sale and conveyance which had been made in order to effectuate that trust, and to compel plaintiff to elect whether she would accept 5 shares in Trust No. 2738 or $50 in cash.

It thus appears that the fact situation was quite similar to the situation in the instant case. However, there was no power in the trustee in the original trust, No. 1090, to convey all the assets of the trust to the new trust. There, as here, there was no appraisement of the property or other evidence before the trial court by which the actual value of the assets of the old trust could be ascertained. The trial court denied the plea of the bank and granted plaintiff partition as prayed. The Supreme Court, in affirming the trial court, said:

"The supplemental complaint's allegation that there were breaches of trust is denied by applicants' answer and counterclaim. However, these latter pleadings indicate that the appellants knew that the bank's power to sell as trustee ended on August 15, 1939. This is fairly inferred from the fact that they attempted to create a new trust (trust No. 2738) on August 14, 1939, and the sale, conveyance and reconveyance to the bank on or about December 6, 1939. They had no power to compel appellee to either enter into a new trust agreement, to accept a new certificate for five shares or to accept ten cent on the dollar. The bank's authority had ended and whether it can be said that there can be a breach of a terminated trust, the agreement dated August 14, 1939, and the subsequent sale, conveyance and reconveyance, were void."

Such, we hold, is the law in the instant case. Neither the trustees of Petroleum Royalties Company, the trustees of Petroleum Royalties, Limited, nor the court had the power to compel the objecting shareholders to enter into any new trust agreement and accept shares in the new trust in exchange for their shares in Petroleum Royalties Company, nor did the court have the power,

as it attempted to do, to make the shares owned by the objecting shareholders represent a like number of shares in the new trust. The objecting shareholders were given no opportunity to accept in cash the reasonable market value of their interest in the trust estate.

We do not hold that after objecting shareholders have been paid their proportionate part of the value of the assets of the old trust, the remainder of the shareholders may not agree to the plan of the trustees in the organization of the new trust and exchange their shares in the old trust for shares in the new trust, the expense thereof to be paid out of the assets of the trust remaining after payment to objecting shareholders. It is a matter of right of freedom of contract. As was said in Schumann-Heink v. Folsom, 328 Ill. 321, 159, N. E. 250, 58 A. L. R. 485:

"In considering whether any contract is against public policy, it should be remembered that it is to the interests of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts. . . . if there be one thing more than any other which public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contract, and that their contracts, when entered into fairly and voluntarily, shall be held sacred and shall be enforced by the courts."

Reversed.

HURST, V. C. J., and BAYLESS, WELCH, and DAVISON, JJ., concur.