(No. 31843.—)

ETHEL C. HOPKINS, Appellant, *v.* AUSTIN STATE BANK
*et al.*, Appellees.

*Opinion filed September 21, 1951—Rehearing denied Nov. 19, 1951.*

Horace A. Young, of Chicago, for appellant.

Castle, Brintlinger & Carey, of Chicago, (Franz W. Castle, and Patrick S. Filter, of counsel,) for appellee Austin State Bank; Harold J. Rosenberg, and Caplow & Kelley, both of Chicago, (C. A. Caplow, of counsel,) for other appellees.

Mr. Justice Hershey delivered the opinion of the court:

Plaintiff filed a suit in the circuit court of Cook County praying for an accounting under a trust agreement, for removal of the trustee, termination of the trust, and for an order declaring plaintiff to be the sole owner of the real estate comprising the corpus of the trust. Defendants to the suit were the trustee and the other two beneficiaries of the trust. A counterclaim filed by the other two beneficiaries prayed for termination of the trust, a conveyance of the real estate held by the trustee to the three beneficiaries, as tenants in common, and for partition. From a decree denying the principal relief prayed for in the complaint and ordering partition of the premises, plaintiff has perfected an appeal to this court.

Plaintiff, Ethel C. Hopkins, nee Russell, and the defendants, William J. Russell, Jr., and James Russell, were the only heirs-at-law of William J. Russell, Sr., who died, testate, on August 1, 1933, seized in fee simple of three parcels of real estate. One of the properties, known as the Pine Avenue property, was improved with an apartment building worth approximately $50,000 at the time of his death. The other two pieces of property, one of which was a vacant lot, while the other was improved with a small frame building having comparatively little value, were situ-

ated on Blue Island Avenue. Some years prior to the death of William J. Russell, Sr. a first mortgage had been placed on the apartment house property, to secure an indebtedness in the principal sum of $62,500. On January 10, 1934, this mortgage became due with a principal balance of $57,500. Plaintiff, at the same time, was the holder of a junior mortgage on the same premises, which had been executed by her father, upon which was due a principal balance of $10,618.61. This was her only interest in the property. Her brothers were the beneficiaries of her father's will. At that time the estimated worth of the apartment house was only about $50,000. The estate of William J. Russell, Sr., did not have sufficient assets with which to pay off the first-mortgage indebtedness. The estate proved to be insolvent. It appeared that unless something was done immediately the first mortgage would be foreclosed and plaintiff and her two brothers would lose their respective interests in the real estate. In accordance with a plan entered into with her two brothers and the Austin State Bank, as trustee, plaintiff filed her claim against their father's estate as a sixth-class claim. The holder of the first mortgage forebore the filing of a claim. After the payment of claims of the first and second class, there remained only enough assets in the estate to pay 62 per cent of sixth-class claims. This percentage produced the sum of $6,583.53 in payment of plaintiff's claim, which amount was turned over to the Austin State Bank to be used in furtherance of the plan to obtain title to the decedent's real estate so that it might be preserved, under a trust, for the benefit of plaintiff and her two brothers. The bank used $2200 of the sum thus provided to purchase the interest of William J. Russell, Sr., deceased, in the three parcels of real estate, which were sold to pay debts of his estate. The balance of the sum received from plaintiff was applied to payment of interest on the first mortgage, payment of taxes, and expenses attendant upon securing an extension

of the first mortgage. Plaintiff and her two brothers, William J. Russell, Jr., and James Russell, as heirs-at-law of their ancestor, conveyed all of their interest in the properties by a quitclaim deed to the Austin State Bank, as trustee. By this conveyance and by the purchase of the decedent's interest at the sale to pay debts of his estate, the Austin State Bank, as trustee, became vested with the legal title of the three parcels of real estate, subject to the existing mortgage, unpaid taxes and assessments.

On October 13, 1934, plaintiff and her two brothers entered into a trust agreement with the defendant, Austin State Bank, as trustee, which provided that upon acquisition of title to the real estate of William J. Russell, Sr., in conformity with the proposed plan, the trustee should hold title for the benefit of plaintiff and her two brothers, the defendants, William J. Russell, Jr., and James Russell, in equal shares, subject to the encumbrances, taxes, and liens against the real estate. The term of the trust was for ten years. The trustee was authorized to execute renewal and extension agreements of the first mortgage encumbrance, or to execute new mortgages to secure the indebtedness against the real estate. Upon an extension of the first mortgage being obtained, the trustee was authorized to release the junior mortgage held by plaintiff. At the end of ten years the trustee was directed to convey the premises to the three beneficiaries. The trustee was given full power of management and operation of the premises, was to receive all income for the ten-year period, and was directed to pay all taxes and assessments levied against the premises, and the interest on the mortgage indebtedness. No other expenditure in excess of $25 was authorized without the written consent of the beneficiaries. The trustee was authorized to delegate the power of management upon receiving written consent of the three beneficiaries. The beneficiaries reserved the right to direct a

sale by the trustee, but agreed that their rights under the trust agreement should be deemed to be personal property. The last paragraph of the trust agreement provided that, in consideration of the beneficial interest provided for them in the trust agreement, James Russell and William J. Russell, Jr., guaranteed to the trustee that the net income of the premises at the end of the first four-year period of the trust would be $4000; that if the net income from the real estate at the expiration of the first two years was less than $2000, then James Russell and William J. Russell, Jr., agreed to contribute within thirty days, in equal proportions, the balance necessary to aggregate the sum of $2000; that if the net income from the real estate at the expiration of the four-year period was less than $4000, then James Russell and William J. Russell, Jr., agreed to make up the sum necessary to aggregate $4000. It was further provided that in the event that the net income received from the premises did not aggregate the amount specified for the respective two-year or four-year periods, the trustee should give written notice of the deficit to James Russell and William J. Russell, Jr., by registered mail, and that, if either of them did not pay to the trustee his share of the deficit within ten days or give security for such deficit, Ethel Russell would have the right, at her option, to direct the trustee to sue for the amount of the deficit, or, if the default in making up the deficit continued for at least sixty days, she would have the right to take over the interest of the party in default.

After the execution of the trust agreement and the acquisition of the three parcels of real estate by the bank, as trustee, the three beneficiaries of the trust authorized the bank, in writing, to retain the firm of F. C. Pilgrim & Sons to act as agents of the trustee in the operation of the apartment building. Thenceforth, the collection of rents, general management and operation of the property were

undertaken by the agent of the trustee bank. Monthly reports of collections and expenditures were rendered by the managing agent to each of the beneficiaries throughout the term of the trust. Soon after the properties had been acquired by the trustee it developed that all three of the beneficiaries had taken up their respective abodes in separate apartments in the Pine Avenue apartment building, and continued to reside therein from that time until the time of the trial. None of the beneficiaries paid any rent to the trustee on account of their occupancy of the premises, although demands for payment of rent were made upon each of them by the trustee. In addition, the two brothers, William J. Russell, Jr., and James Russell, continued to occupy the Blue Island Avenue property without paying any rent to the trustee. The chancellor found that there was due from William J. Russell, Jr., on account of rent the total sum of $13,530; from James Russell on account of rent the total sum of $12,030; and from plaintiff, Ethel Russell Hopkins, the total sum of $10,400. The decree made adequate provision for adjusting and equalizing the rent account among the three beneficiaries. The bank, as trustee, through its appointed agent, continued to operate the properties, secured extensions of the first mortgage, made payments of interest and principal on the mortgage, paid the taxes and operating expenses until the final decree was entered in this cause. The taxes which had become delinquent on the Blue Island Avenue property were not paid promptly by the trustee bank, and the decree properly penalized the trustee for its neglect in that respect. The principal balance due on the mortgage, as extended, was the sum of $38,240 at the time the decree was entered in this cause. The property, in the meantime, had increased in value to an estimated worth of $108,800.

Plaintiff's principal contention is that the trial court erred in not decreeing her to be the sole owner of the premises comprising the corpus of the trust. This con-

tention is based on the theory that the net income of the property for the first two years the trust was in operation did not aggregate the sum of $2000, and at the expiration of four years from the inception of the trust did not aggregate the total sum of $4000, and that the bank should, therefore, at the expiration of said periods, have declared a deficit in the net income from the premises and should have called up the two guarantors, William J. Russell, Jr., and James Russell, to make up the deficit of the respective sums guaranteed by them; that if such deficiencies had been declared and notice given to the guarantors, as provided in the trust agreement, the plaintiff would have had the right, after the guarantors had been in default for the required length of time, to take over their interest in the trust property. Plaintiff argues that the parties themselves construed the applicable section of the trust agreement to require $2000, cash on hand, at the end of the two-year period, and $4000, cash on hand, at the end of the four-year period, and, in any event, the term "net income" meant the gross receipts, less certain deductions, including depreciation, payment of back taxes, and other items not considered by the trustee in making its accounting.

The evidence shows that the total income from the properties, for the first four-year period of the trust, amounted to $50,943.71; that operation expenses, including items for decoration, lights, janitor service, repairs, water rent, insurance, fuel and management fees totaled $24,379.84 for the same period. In addition, $11,279.47 interest payments were made on the first mortgage, while property taxes, social security taxes, trustee's fees, and other annual expenses, brought the additional expenditures to the total sum of $17,329.16. The computations of these items of receipts and expenditures were made from the monthly statements which had been delivered regularly to the beneficiaries. The net income at the end of the four-year period was computed as $9234.71, without giving

credit to the trustee for the unpaid rent of the three beneficiaries, which for the same period aggregated the total sum of $8410. The trial court found that there was no deficiency in the net income at the end of the respective periods designated in the trust agreement, and entered a decree terminating the trust, directing the trustee to make conveyance to the three beneficiaries as tenants in common, declaring the interests of the beneficiaries in the real estate, ordering partition of the premises, and appointing commissioners to carry the decree into effect.

It must be borne in mind that the primary purpose in setting up the trust was to protect the interests of the three beneficiaries in the real estate which comprised the corpus of the trust. The plaintiff and her two brothers each conveyed to the trustee whatever interest they might have had in the real estate. The encumbrances against the property exceeded its worth at that time. The first mortgage was past due, and would undoubtedly have been foreclosed in due course. It was to avoid the possibility of foreclosure that the trust agreement was entered into by those interested in the real estate. Under these circumstances, a reasonable construction of the agreement of the defendants, William J. Russell, Jr., and James Russell, with the defendant trustee, guaranteeing that the net income from the property would aggregate a certain amount at the end of the specified periods, would be that such agreement was made for the purpose of implementing the trust by guaranteeing to the trustee that the designated amounts would be available to meet the obligations of the trust as they arose, and thus preserve the property for the benefit of all the beneficiaries. While plaintiff argues that the term "net income" was intended to mean "cash on hand" at the end of the respective periods, there is nothing in the record to indicate that there was any intention or necessity to accumulate a fund for the express purpose of distribution, or expenditure, at the end of the designated periods. Incidental to the guaranty

of net income for the use of the trustee in accomplishing the primary purpose of the trust was the provision whereby plaintiff was given a right to protect her interest in the corpus of the trust by taking over the interest of either or both of the other two beneficiaries if they should abandon their respective interests by not making up any deficiency which might be declared to exist between the net income and the designated sum.

Much difficulty could have been avoided if the trust agreement had been so worded as to specify what was meant and intended by the words "net income," as used in connection with the guaranty that the net income should aggregate certain specified amounts at the end of the periods designated. The trustee did not declare any deficiencies of net income either at the end of the two-year period or at the end of the four-year period. It appears that full disclosures of the total receipts and total expenditures were rendered to each of the beneficiaries in the form of regular monthly statements. It is not contended that these monthly statements did not reflect a true account of receipts and expenditures made on behalf of the trust estate. The difficulty, as already pointed out, arises out of the application of the term "net income" to the accounting of the trustee. In the absence of express directions to the trustee contained in the trust agreement, where the corpus of the trust is composed of real estate, the term "net income" ordinarily means all of the income remaining from rents, issues and profits, after deducting all the ordinary expenses incurred in connection with the trust estate, or with its administration and management, including annual taxes assessed against the estate, premiums on insurance taken upon the trust property, interest on mortgages, ordinary repairs, water rents, costs of power, light, fuel and janitorial services, the trustee's regular compensation for operating the premises, and other necessary annual expenses of a like nature. All other expenses, including improvements to the

real estate, the cost of maintaining, defending or protecting the title to the trust property, principal payments upon mortgages and encumbrances covering the property, are properly charged to principal rather than to income. Cases from other jurisdictions in general accord with this definition of "net income" are *Melvin* v. *Hossman,* 290 Mo. 464; *Mulcahy* v. *Johnson,* 80 Colo. 499; and *Ash* v. *Ash,* 126 N. J. Eq. 531. The trial court found that proper accounting procedure, in compliance with the above principles, had been followed in arriving at the net income accrued during the specified periods, and we find nothing in the evidence to sustain the charge that such finding of fact is contrary to the manifest weight of the evidence. Where the master has heard the testimony of the witnesses and made findings of fact based on the evidence, which findings are approved by the chancellor, this court will not disturb the decree entered in the trial court unless it is manifestly against the weight of the evidence. (*Zeta Building Corp.* v. *Garst,* 408 Ill. 519; *Finley* v. *Felter,* 403 Ill. 372.) No deficit of net income having occurred, there was no occasion for the trustee to declare a deficiency, and the right of plaintiff to take over the interest of either of the other two beneficiaries did not arise.

During the progress of the litigation the ten-year term provided for the existence of the trust expired. The trial court properly terminated the trust, as prayed in the counterclaim, determined the interests of the beneficiaries in the real estate comprising the corpus of the trust and decreed a partition between the respective owners of such real estate. *Yedor* v. *Chicago City Bank and Trust Co.* 376 Ill. 121.

There being no reversible error apparent in the record, the decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*