Virginia B. Mueller v. Commissioner. Gustave A. Mueller and Virginia B. Mueller v. Commissioner.
Mueller v. Commissioner
Docket Nos. 44095, 44096.
United States Tax Court
T.C. Memo 1955-120; 1955 Tax Ct. Memo LEXIS 217; 14 T.C.M. (CCH) 439; T.C.M. (RIA) 55120; May 16, 1955
John G. Heard, Esq., for the petitioners. M. Clifton Maxwell, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax and penalty against petitioners as follows: Docket
No.
Petitioner
Year
Deficiency
Penalty
44095
Virginia B. Mueller
1945
$1,577.21
1946
2,285.16
$335.97
1947
4,009.25
44096
Gustave A. Mueller and Virginia B. Mueller
1948
2,241.48
The contested issues are (1) whether the respondent erred in determining that for each of the taxable years involved certain trust income was properly distributable and taxable to petitioner Virginia B. Mueller, an income beneficiary, where the current trust income of *218 each taxable year was applied against an accumulated deficit arising out of the prior application against trust income of carrying charges for certain unproductive leaseholds, and (2) whether petitioner Virginia B. Mueller is liable for the 25 per cent penalty for failure to make and file an income tax return for the taxable year 1946. Findings of Fact The facts which are stipulated are found accordingly. During the calendar years 1945, 1946, 1947, and up to March 12, 1948, petitioner Virginia B. Mueller, nee Virginia Lee Boyce, resided in Washington, D.C. Her individual income tax returns for these years were filed with the collector of internal revenue, Baltimore, Maryland, under the name of Virginia Boyce Sterling. Petitioners Virginia B. Mueller and Gustave A. Mueller were married on March 12, 1948, and filed their joint income tax return for that year with the collector of internal revenue for the first district of Texas, at Austin. As petitioner Gustave A. Mueller is involved only by reason of having filed a joint return with his wife, Virginia B. Mueller, the latter will hereinafter be referred to as petitioner. Petitioner, during each of the taxable years involved, *219 was an income beneficiary under an Illinois trust established by the will of her father, William D. Boyce, deceased, who died June 11, 1929. The trust, which was called the William D. Boyce Testamentary Trust No. 3649, and hereinafter referred to as the trust, named petitioner as a life beneficiary of one-sixth of the income of such trust. After transferring all of the residuary estate in trust, the will provided in pertinent part as follows: "THIRD: * * *
"(a) I direct my said Trustee to hold my said trust estate for the use and benefit of my wife and my children and their children and issue of children, as hereinafter set forth, and after paying or reserving out of the income (as distinguished from the principal) of the trust estate all the expenses of managing and preserving the trust properties, including taxes, assessments, repairs, insurance, the compensation of my Trustee, and other reasonable, necessary and proper charges or expenses of the trust, I direct that quarterly the net income shall be divided into six (6) equal parts, two (2) of said parts to be paid to my wife MARY JANE BOYCE in person for life for her sole and separate use, one (1) of said parts to be paid *220 to my daughter HAPPY BOYCE PARKER in person for life for her sole and separate use, one (1) of said parts to be paid to my daughter SYDNEY BOYCE BISHOP in person for life for her sole and separate use, one (1) of said parts to be paid to the legally appointed guardian of my daughter VIRGINIA LEE BOYCE until she shall become of legal age and after she shall have become of legal age to be paid to her in person for life for her sole and separate use, and one (1) of said parts, called for convenience the 'BEN S. BOYCE PART', to be held in trust by said Trustee under a separate trust of income and in trust for the use of my son BEN S. BOYCE and any child or children of said Ben S. Boyce, as hereinafter set forth." The trustees were then given comprehensive and unlimited powers and were relieved of any liability for errors in judgment. The will also contains a spendthrift clause and a provision that any stock dividends are to be credited to principal. The trust was to terminate 21 years from the death of the survivor of the life beneficiaries. The principal of the trust was to be conveyed to the grandchildren, or issue thereof, living at such date. During each of the taxable years involved *221 petitioner was of legal age. Among the assets of the trust were certain long-term leaseholds on improved real property in the City of Chicago, Illinois, located at 26-28, 30-32, and 500-512 North Dearborn Street. By reason of the unprecedented economic depression in the years following the death of William D. Boyce, all of these leasehold properties were for many years wholly unproductive of income. The carrying charges and expenses of these leaseholds were charged against the other items of income of the trust. From 1931 to 1945 all of the income of the trust estate was consumed by these carrying charges and expenses of the leaseholds. Not only did the leaseholds fail to carry themselves, but they consumed the income earned by the other assets of the trust, and the excess of such carrying charges and expenses was paid out of the principal of the trust and was charged to an income deficit account. On July 1, 1945, the income deficit account of the trust estate reached its peak of $135,339. In 1945, for the first time since 1931, the trust estate earned income on its other assets in excess of that required for the payment of current carrying charges and expenses of the leaseholds. *222 Pursuant to the decision of the trustees, this income was not distributed to the income beneficiaries of the trust but was applied in reduction of the above-mentioned income deficit. The income deficit account of $135,339 was not finally wiped out until 1948. In 1945, 1946, and 1947, all of the income of the trust properties was applied, by direction of the trustees, in reduction of the income deficit account, and none of such income was distributed to petitioner. Also, a part of the income of the trust estate for 1948 was directed by the trustees to be used to discharge the income deficit account. The trustees, in filing the fiduciary income tax returns for each of the years in question, claimed the following amounts as being petitioner's 1/6 share of the distributable income of the trust and deducted such amounts in the respective years in arriving at the net income of the trust taxable to themselves as trustees: 1945
$ 5,202.89
1946
5,663.19
1947
11,268.40
1948
9,744.33 During 1945, 1946, and 1947, none of the income (or any of the principal) of the trust was paid or otherwise distributed to petitioner, in cash or in any other form, but rather all of such *223 income was applied against the income deficit account at the direction of the trustees. During 1948, only $2,050 of the income of the trust was actually paid or otherwise distributed to petitioner in cash or in any other form. The balance of the $9,744.33, which had been deducted by the trustees on the fiduciary income tax return for 1948, was applied by the trustees to reduce the income deficit account to zero. On or about August 18, 1949, petitioner filed suit in the Circuit Court of Cook County, Illinois, in which she sought to have the action of the trustees of the trust reversed by the court and to require the trustees to restate their accounts by charging to the principal of the trust, rather than the income, the carrying charges and expenses of the leaseholds at 26-32 North Dearborn Street from January 1, 1930, to the date of the complaint, and that at 500-510 North Dearborn Street from January 1, 1932, to the date of the complaint. These aggregate carrying charges and expenses for such leaseholds for such periods amounted to $485,184.58. Upon such restatement the trustees would then be required to pay to petitioner her share of the income as disclosed thereby. On May 21, 1951, the *224 Circuit Court of Cook County, Illinois, entered its decision and decree in petitioner's suit in accordance with a compromise agreement of the parties. That decree is incorporated herein by reference. During each of the taxable years petitioner was also an income beneficiary of an inter vivos trust, the William D. Boyce Trust No. 2350, created by her father during his lifetime. Petitioner's share of the distributable income from such trust for the calendar year 1948 was $2,677.75. The actual distribution in cash or in any other form during and in respect of the year 1948 amounted to $3,100, of which the sum of $422.25 constituted a distribution of principal and the sum of $2,677.75 constituted a distribution of income. By stipulation, respondent concedes that he erred in including in petitioner Virginia B. Mueller's income for 1948 the sum of $422.25 as her share as a beneficiary of the William D. Boyce Trust No. 2350. In determining his deficiency for the taxable year 1946 respondent imposed a 25 per cent penalty on petitioner Virginia B. Mueller for failure to make and file a return for that year. Petitioner Virginia B. Mueller duly filed her individual income tax return for *225 the year 1946. Opinion LEMIRE, Judge: The first issue presented is whether the respondent erred in determining that for the taxable years 1945 to 1948, inclusive, certain trust income was properly distributable and taxable to petitioner Virginia B. Mueller, a life beneficiary of 1/6 of the income of an Illinois testamentary trust. Petitioner contends she is not taxable on her share of the income of the testamentary trust not paid to her during the taxable years in question. It is well settled that under section 162 (b), Internal Revenue Code of 1939, income of a trust estate is taxable to the income beneficiary, whether or not it is actually paid, if under the trust instrument it is currently distributable. Freuler v. Helvering, 291 U.S. 35. The question whether the income of a trust is currently distributable is to be determined by the trust instrument as construed under the laws of the state under which it is to be administered. The provisions of the will here involved and the rights of the parties thereunder have not been interpreted by the Illinois courts. While petitioner brought a suit to have the will construed and her rights adjudicated, the action was *226 compromised by the parties and a decree was entered giving effect to such agreement. Such decree is not a binding adjudication upon this Court. Freuler v. Helvering, supra; Erik Krag, 8 T.C. 1091; Charles S. McVeigh, 3 T.C. 1246. We are, therefore, under the independent duty to construe the provisions of the will insofar as they bear on the issue presented. It is the rule in Illinois, as in other jurisdictions, that the intent of a particular testator is determined from a consideration of the whole will and all of the surrounding circumstances, including the situation of the testator's property and the status of the beneficiaries at the time of the testator's death. Love v. Engelke, 368 Ill. 342, 14 N.E. (2d) 228. No testimony was presented bearing upon the intent of the testator and, therefore, we have only the bare instrument and such facts as are stipulated to guide us. The provision of the will pertinent here is that contained in subsection (a) of paragraph "THIRD" set out in our findings of fact. It is therein provided that "after paying or reserving out of the income (as distinguished from the principal) of the trust *227 estate all the expenses of managing and preserving the trust properties, including taxes, assessments, repairs, insurance, the compensation of my trustee, and other reasonable, necessary and proper charges or expenses of the trust * * *," the quarterly "net income" was to be divided into six equal parts, two parts of the income to be paid to decedent's widow, and one part to each of his four children during their life. The trust is to terminate 21 years after the death of the survivor of the income beneficiaries with remainder over to their descendants. The powers given to the trustees are as comprehensive and unlimited as the testator could possibly confer. Sometime following the execution of the will in 1927 certain of the leaseholds which included the trust corpus became unproductive. The current income was insufficient to pay all of the carrying charges and expenses of the administration of the trust. Thereupon, the excess charges were paid by the trustees from principal and a deficit account against future income was set up. In the taxable years the current income was applied to current charges and the balance was used to reduce the deficit account. It was not until 1948 that *228 the deficit account was fully discharged. The specific question presented is whether in the event the current income was insufficient to cover all current charges the testator intended such charges to be paid only to the extent of the current income, or whether he intended future income to be invaded for such purpose. We are here concerned with a testamentary trust. The purpose of the trust appears to us to be the payment of income to the life beneficiaries who are the primary objects of the testator's bounty. It is a general rule in construing a will that the interest of a life tenant is to be preferred to the interest of the remainderman in all doubtful cases. We find nothing in this will that is to be taken as indicative of the intent of the testator to accumulate his estate for second or third generations of unborn descendants, except possibly the provision providing that stock dividends shall become a part of the principal. Net income is usually ascertained by subtracting current expenditures allowable to income from receipts allowable to income. In other words, the net income is the net return of the property after the annual charges. In Hopkins v. Austin State Bank, 410 Ill. 67, 101 N.E. (2d) 536, 541, *229 the Supreme Court of Illinois in construing a trust deed providing for the payment of "net income" defined the term as follows: "* * * In the absence of express directions to the trustee contained in the trust agreement, where the corpus of the trust is composed of real estate, the term 'net income' ordinarily means all of the income remaining from rents, issues and profits, after deducting all the ordinary expenses incurred in connection with the trust estate, or with its administration and management, including annual taxes assessed against the estate, premiums on insurance taken upon the trust property, interest on mortgages, ordinary repairs, water rents, costs of power, light, fuel and janitorial services, the trustee's regular compensation for operating the premises, and other necessary including improvements to the real estate, the cost of maintaining, defending or protecting the title to the trust property, principal payments upon mortgages and encumbrances covering the property, are properly charged to principal rather than to income. * * *" While there is an express direction as to the payment of certain carrying charges and expenses out of income in the trust before *230 us indicating an intention on the part of the testator that current carrying charges of unproductive property were to be paid out of current income, we find nothing to indicate that it was the testator's intent that the future income of the trust was to be applied in the event the current income was insufficient to meet those obligations. To so construe the will would, in our opinion, thwart the primary object of the testator to provide an annual income for his widow and children. Since the trust properties were productive at the time the will was executed, the testator, obviously, did not envision the conditions which later confronted the trustees. We are required to interpret the language used in the light of the conditions existing at the time the will was executed. Accordingly, we are of the opinion that it was the testator's intention that the carrying charges were to be paid only to the extent of annual income. Therefore, we hold that petitioner Virginia B. Mueller is properly taxable on her prorata share of the trust income received by the trustees in excess of the current charges for each of the taxable years 1945, 1946, and 1947, and that petitioners are properly taxable *231 on such share for the taxable year 1948 as income of the trust distributable within the meaning of section 162(b), Internal Revenue Code of 1939. On this issue we sustain the respondent. The second question presented is whether petitioner Virginia B. Mueller is liable for the 25 per cent penalty for failure to make and file an income tax return for the taxable year 1946. The evidence shows that the respondent's records do not disclose the filing of a return by petitioner Virginia B. Mueller for either of the taxable years 1946 or 1947. Petitioner retained a copy of her 1947 return, which apparently satisfied respondent that a return was filed since he asserts no penalty for that year. The petitioner did not retain a copy of her 1946 return, consequently, the respondent determined a 25 per cent penalty for that year. The record shows that petitioner made certain payments which were credited against the 1946 tax liability. The petitioner testified unequivocally that she did file a return for that year and we are inclined to give full credit to her testimony since the evidence shows that the respondent's records were confused, conflicting, and unreliable. Therefore, we hold that the *232 imposition of the 25 per cent penalty for failure to make and file a return for the year 1946 is disallowed. Decision will be entered under Rule 50.