(No. 17499.—Reversed and remanded.)
JOSEPHINE L. KELLOGG, Appellee, *vs.* P. H. KARTTE *et al.*—
(MANDEL MENDELSON, Appellant.)

*Opinion filed October 28, 1926—Rehearing denied Dec. 16, 1926.*

1. SPECIFIC PERFORMANCE—*when contract is binding although purchasers do not sign.* To constitute a valid executory contract for the sale of land both parties must be bound and there must be concurrent mutual promises binding upon the parties, respectively, or neither will be bound; but where such contract is reduced to writing showing who are the parties, identifying the property and specifying the price and terms of sale and is signed by the vendor, the contract is mutual and binding when accepted by the purchasers named in the contract although signed by only one of them.

2. SAME—*when vendor is not entitled to declare forfeiture on purchasers' failure to elect.* Where a contract for the sale of real estate requires the vendor, on being informed by the purchasers of defects in the title, to notify them of her inability to remove the defects and requires the purchasers within a certain time after such notice to elect to take the title as it stands, the vendor, having failed to give such notice, cannot declare a forfeiture and insist on retaining the earnest money as liquidated damages because of the purchasers' failure to elect to take the title as it stands; and the vendor is in no position to compel performance by the purchasers' assignee.

3. SAME—*contract for purchase of land is assignable.* A contract for a conveyance of land is assignable by the purchasers and carries with it the rights and remedies that exist in the assignors.

4. SAME—*when assignee of purchasers fails to make sufficient tender of performance.* The assignee of purchasers in a contract for a conveyance is entitled to compel a conveyance upon his complete performance of the assignors' agreement, but where the assignee merely notifies the vendor of the assignment and of his election to take the title in accordance with the terms of the contract but tenders only the amount due up to the date of his election he is not entitled to specific performance, as he must tender to the vendor a complete performance of all things required to be done by his assignors.

5. SAME—*purchaser, having right of election, cannot wait until property increases in value before making tender.* A purchaser having a right to elect to take the vendor's title as it stands has no right to speculate on the result, avoiding liability until an increase in the value of the property is sufficient to assure him of a profit

were he to tender the purchase price, even though the vendor, by failure to give notice of her inability to cure defects in the title, has waived her right to insist on an election within a certain time as provided in the contract.

APPEAL from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

COBURN, KEARNEY & COBURN, for appellant.

ELAM L. CLARKE, and LESLIE A. NEEDHAM, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

In November, 1923, Josephine L. Kellogg negotiated a sale of certain real estate in Lake county, represented to be approximately 225 acres, to P. H. Kartte and John J. Krueger at the price of $350 an acre, and on November 19 a written contract embodying the terms agreed upon was prepared by her attorney for execution by the parties, who had met at the attorney's office for the purpose. Before the writing was completed Krueger had to go back to his work, and it was agreed that the other two parties to the contract should sign it and it should be left in escrow with the Chicago Title and Trust Company and Krueger should sign it later. The contract was completed and signed by Miss Kellogg and Kartte and the same day was deposited with the trust company under an escrow agreement signed by Miss Kellogg, Kartte and Krueger's mother, together with a deposit of $1000 earnest money required by the contract, which was advanced by Krueger's mother. Before the contract was performed disagreements arose between the parties, which resulted in Kartte's filing in the recorder's office an affidavit setting forth that he had entered into a contract with Miss Kellogg for the purchase of the land, which, with the earnest money, was placed in escrow, and that he had always been ready and willing to perform his part of

the contract but that she had failed and refused to carry it out, and she thereupon filed a bill to remove the cloud upon her title caused by the record of the affidavit. Kartte, Krueger, Mandel Mendelson, to whom they had assigned the contract, and the Chicago Title and Trust Company, were made defendants to the bill and filed separate answers, the trust company disclaiming interest in the land or contract except as escrow agent. In addition to his answer Mendelson filed a cross-bill praying for specific performance of the contract. The cause was referred to a master, who made a report recommending the dismissal of the original bill and the granting of a decree of specific performance on the cross-bill. The court sustained exceptions to the report and entered a decree finding that the contract had been abandoned by all the parties and ordering the affidavit expunged from the record and the cross-bill dismissed for want of equity. Mendelson has appealed from this decree and contends that the decree is not justified by the evidence and is not based on the pleadings; that the sole defense to the cross-bill relied on by the appellee is that there was no contract, and in her pleading there is no claim that the contract was abandoned and in the evidence no warrant for such a finding that it was abandoned.

The facts appearing from the evidence are, that the contract was drawn in accordance with the agreement of the parties, was signed and deposited in escrow, as has been stated, and it was agreed that Krueger might sign it afterward upon being identified by Linden, Miss Kellogg's attorney. He called at Linden's office several times to get him to go with him to the trust company's office and identify him but did not find him in. When he did find him Linden was in a hurry to go to a train and declined to go with him then, but said that there was no hurry,—he could sign it any time. Later Linden refused to identify him, and the contract was not actually signed by Krueger until after Miss Kellogg filed the bill in this case. However, all the

parties treated the contract in the meantime as in force. It required Miss Kellogg to deliver within a reasonable time either a merchantable abstract of title or a title guaranty policy brought down to show the title as of the date of the contract. Within ten days after the receipt of such abstract of title or title guaranty policy the purchasers were required to deliver to the vendor a memorandum in writing signed by them or their attorneys, specifying in detail their objections to the title, if any, or if none, then stating that the title was satisfactory. In case material defects were found in the title and reported and such defects were not cured within sixty days after notice thereof, it was provided that the purchasers might elect to take the title as it then was, but the vendor's deed should not be construed as a warranty against such objections to the title, provided that at the end of said sixty days the vendor should notify the purchasers or their attorney that the objections could not be removed, whereupon the purchasers should, within ten days next following said sixty days, notify the vendor of their intention to either take the title as it was or abandon their claim on the premises under the contract. It was further stipulated their failure to so notify the vendor should be construed as an abandonment. Time was declared to be of the essence of the contract, and it was stipulated that upon failure of the purchasers to perform the contract promptly, the earnest money should, at the option of the vendor, be retained by the vendor as liquidated damages.

It is contended by the appellee that because of the failure of Krueger to sign the contract it never became effective; that it lacked mutuality, and that the appellee could not have enforced it against Krueger and therefore it can not be enforced against the appellee. To constitute a valid executory contract for the sale of land both parties must be bound; there must be concurrent mutual promises binding upon the parties, respectively, or neither will be bound. (*Gage* v. *Cummings,* 209 Ill. 120; *Clark* v. *Potts,* 255 id.

183.)   Where, however, a contract for the sale of land has been agreed upon and has been reduced to writing, showing who are the parties, identifying the property and specifying the price and the terms of the sale and the writing has been signed by the seller and accepted by the purchaser as a contract, the contract is mutual and it is binding upon both parties. (*Ullsperger* v. *Meyer*, 217 Ill. 262; *Forthman* v. *Deters*, 206 id. 159.)   The terms of the sale in this case were fully agreed upon by the parties, were reduced to writing by the vendor's attorney, and all the parties treated the contract as complete and proceeded to do the things necessary to carry it into execution.   To comply with its terms the seller proceeded to furnish the abstract which she was required to furnish and the purchasers to examine the title and make objections, if any they had, as was required of them.   The appellee regarded the contract as in force, and on December 19, 1923, delivered an abstract of title to a certain part of the property and on January 3, 1924, a guaranty policy to another part of it, which were examined and an opinion furnished Kartte and Krueger showing several objections to the title, one of which was an unsatisfied trust deed for $18,000, and another a trust deed to secure a note of the appellee for $300, and a third the unpaid taxes for 1922 and 1923.   The abstract and guaranty policy did not cover all the property, and no abstract of the title of the part which it did not cover was furnished by the appellee until March 12.   On March 24, 1924, the appellee gave to Kartte and Krueger a notice of forfeiture of the contract for their failure to furnish a memorandum or opinion of the title within the time provided for by the contract, for which she elected to declare the contract terminated and to retain as liquidated damages the $1000 deposited.

Kartte testified that between the date of the signing of the contract and the giving of notice of forfeiture the property had more than doubled in value.   The decree is based

on the finding that Kartte and Krueger, after the expiration of the sixty days within which the appellee was required to cure the defects in the title of which she had received notice, having failed to notify the appellee of their election to take the title subject to the objections made by them, the contract ceased to have any effect and was abandoned by all the parties and Kartte and Krueger became entitled to have the earnest money returned to them. The bill makes no allegation of the abandonment of the contract, but bases the right to have the cloud removed from the title on the allegation that no contract was ever entered into. If there was no contract there could be no decree permitting the appellee to retain the $1000 earnest money as liquidated damages for the breach of the contract. We have held that there was a contract binding upon Kartte and Krueger by reason of their acceptance of the written agreement purporting to bind them. The appellee so regarded it, as appears from her action in serving notice of forfeiture for non-compliance with its terms and claiming to hold the earnest money as liquidated damages for its breach. The declaration of forfeiture by the appellee was not effective for that purpose. The defects in the abstract and guaranty policy delivered by the appellee on December 19, 1923, and January 3, 1924, were stated in the objections of Kartte and Krueger on January 14 and they remained uncorrected on March 14. If the appellee was unable to remove the objections it became her duty to notify the purchasers in writing, and thereupon they would become entitled to elect to take the title subject to the objections. No such notice was given and no obligation to elect arose in the absence of notice. The purchasers were therefore not in default when the appellee's notice of forfeiture was given, and she therefore acquired no right to retain the earnest money as liquidated damages.

On May 23, 1924, Kartte and Krueger assigned their contract of purchase to Mendelson. The contract was as-

signable and carried with it the rights and remedies that existed in the assignors. (*Moore* v. *Gariglietti*, 228 Ill. 143; *Davidson* v. *Dingeldine*, 295 id. 367.) Mendelson, the assignee, had the right, upon tender of the payments required to be made by his assignors and the performance of the things required to be done by them, to enforce performance by the appellee. Upon acquiring the assignment he had the option of completing the contract and insisting upon a conveyance to himself. The appellee could not compel him to perform but he had the right to perform and demand a deed, and a court of equity would under such circumstances, upon complete performance by Mendelson of his assignors' contract, compel a conveyance by the vendor. (*Corbus* v. *Teed*, 69 Ill. 205.) There was no contract between Mendelson and the appellee, and until he did tender performance the appellee could not enforce the contract against him. There was no mutuality between them, and since the appellee could not enforce performance against him he could not enforce performance against her until he had put himself in a position to demand a conveyance by assuming a binding obligation which she could enforce against him to perform everything required of his assignors. Equity requires a complainant seeking specific performance of a contract to convey land, to have been at all times able, ready, willing and anxious to perform. The property had increased largely in value after the making of the contract. Under such circumstances equity will not permit the purchaser to await the event before exercising his right to enforce the contract. Mendelson made no tender to the appellee of complete performance of all things required to be done by his assignors. He notified the appellee that the contract had been assigned to him, that he elected to accept the title as of record on November 19, 1923, and that on June 17, 1924, at 10:30 o'clock, he would appear in the escrow department of the Chicago Title and Trust Company, ready, willing and able to pay to her all

323–29

moneys required to be paid to date under the terms of said contract,—that is, $1000 additional deposit, $2500 payment on the principal and interest, and such other sums as might be due,—in legal tender. He did appear according to notice but the appellee did not. This was not sufficient to entitle him to a specific performance of the contract, because he did not, as assignee, assume any liability to make the additional payments required of the purchasers and to perform in every particular the provisions of the contract required to be performed by his assignors but only offered to make the payments then due, and therefore the appellee could not enforce performance against him. No further action was taken until September 23, 1924, when the appellee filed the original bill in this case, and at that time she could not have enforced performance against Mendelson. His answer was filed on October 15. On October 24 he filed his cross-bill, in which he relied upon waiver of objections to the title and tender of the part of the purchase price that was then due. The pleadings remained in this condition until October 4, 1925, when he amended his cross-bill and offered for the first time to pay the full purchase price provided for in the contract. Until he made that offer he had not put himself in a position to enforce performance against the appellee, though the real estate had greatly increased in value after the making of the contract on November 19, 1923. Equity will not permit the holder of such a contract to speculate on the result, avoiding liability until the increase in value is sufficient to assure him of a profit on tendering the entire purchase price. "Where the property greatly increases in value while the purchaser delays his determination as to taking the vendor's title, a court of equity will regard it as unjust to compel the vendor to perform the contract. Indeed, it has been said that the delay of the purchaser in deciding whether he will accept the title or not is an injustice, because he can enforce the contract against the vendor whether the title be good or

bad, whereas the vendor can only do so in case of a good title." *Morse* v. *Seibold,* 147 Ill. 318.

Objection is made to the decree that it is based upon the finding of the court that the contract had been abandoned by all the parties, while the only defense set up in the appellee's answer to the cross-bill is that no contract between the parties was ever executed. The appellee's answer did not set up, in terms, the affirmative defense of the abandonment of the contract, but it did not admit the assignment of the contract to the appellant or that the appellant had assumed its obligation and had become bound to the appellee for its performance. Since these facts were not admitted it was necessary for the appellant to prove them, and failing to do so no decree could be rendered for the specific enforcement of the contract. In order to enforce the specific performance of the contract it was necessary for the appellant to show that he was bound to the appellee for the performance of all the terms of the contract, so that there should be the mutuality of obligation and remedy which would enable her to enforce the contract against him as well as him to enforce it against her, and the proof shows no such situation. On the contrary, he made no offer to bind himself to the full performance of the contract for many months after its assignment to him, and no effort to enforce its specific performance until after the appellee had filed her bill for the cancellation of the contract.

The appellee was not entitled to retain the earnest money but was herself in default, and the appellant was not entitled to a decree of specific performance, and for these reasons both the bill and the cross-bill should have been dismissed.

The decree is reversed and the cause is remanded, with directions to the court to enter a decree dismissing both the bill and the cross-bill for want of equity. Each party will pay his own costs in this court.

*Reversed and remanded, with directions.*