M. Richard Horan, Appellant, *vs.* Milroy R. Blowitz *et al.*, Appellee.

*Opinion filed January 24, 1958—Rehearing denied March 19, 1958.*

M. RICHARD HORAN, *pro se,* and JOSEPH C. OWENS, both of Chicago, for appellant.

BEN COPPLE, of Chicago, for appellee Milroy R. Blowitz, and GOLAN & GOLAN, of Chicago, (LEONARD W. GOLAN, of counsel,) for appellee Leonard J. Michaelson.

Mr. JUSTICE DAILY delivered the opinion of the court:

Milroy R. Blowitz, the beneficial owner of a Chicago apartment building, Leonard J. Michaelson, his real-estate broker, and a bank which held the legal title, were named as parties defendant in a suit brought in the superior court of Cook County by M. Richard Horan, the appellant. The complaint prayed for specific performance of a contract for the sale of said real estate, for a reformation in accordance with the agreement of the parties, for an accounting of rentals and, in the alternative, sought judgment against either Blowitz, Michaelson, or both, for damages due to both nonperformance and alleged fraud. Evidence was heard by a master who concluded that the equities were with the defendants, that appellant-vendee had proved no damages, and that the conduct of defendants was not

fraudulent. Following his recommendations the chancellor dismissed the cause for want of equity and ordered the return of the vendee's earnest money. A freehold being involved, the vendee has perfected a direct appeal to this court.

The contract in question, which was prepared by Michaelson in his capacity of broker for Blowitz, was in the form of an offer to purchase which was executed by the vendee on May 5, 1953, and accepted by the vendor on the same date. The selling price was $40,000 and the instrument required an immediate deposit of $2,000 as earnest money and payment of $38,000 on receipt of a warranty deed. Other salient provisions of the agreement were that the vendor was to furnish a report of title within 15 days from the contract date, that, upon consummation of the deal, vendor was to furnish statements from the Office of Rent Stabilization confirming $82.50 as the maximum rental for each of the apartments in the building; that the contract was to become null and void unless mortgage financing in the amount of $25,000 could be secured by vendee within 15 days from its inception; and that time was of the essence in the transaction.

Despite the express provisions of the contract, the vendee paid the broker only $500 earnest money, no report of title or rental statements were procured by the vendor, and no formal mortgage commitments were secured by the vendee within the time specified in the contract. With respect to the latter provision it appears the vendee did receive conditional and informal commitments from two lending institutions on May 8 and May 13, respectively, but took no further action to process such applications until June 24, 1953, at which time he made a formal request for a mortgage with a savings and loan association. On the following day the association issued a formal mortgage commitment in the amount of $21,000.

During the contract period, on May 14, 1953, the vendor authorized the vendee to verify the O.P.S. rental ceilings, and it was then discovered that the legal rentals were somewhat less than the $82.50 figure stated in the contract. Although some attempt was made to secure the rental increase, it soon became evident that this was impossible and, no mortgage commitment having been received within the allotted 15-day period, the vendor instructed Michaelson on May 20, 1953, to return the earnest money and inform the vendee that the deal was off. The next day Michaelson delivered the message and attempted to return the $500 deposit, but the tender was refused. Thereafter, between May 21 and June 24, the vendee and Michaelson occasionally discussed the financing and rental problems without the knowledge of the vendor and, in an attempt to revive the transaction, Michaelson secured a substantial rent increase on May 27. Upon the acquisition of the formal mortgage commitment, the vendee and Michaelson made plans to close the deal on June 25, but when the vendor was advised of this fact, he pointed out that the contract had expired on May 20, 1953, and refused to further consider the matter. This decision was contained in a letter from Michaelson to the vendee dated June 24, 1953, and was strongly reiterated by Blowitz in a telephone conversation with the vendee the following day. Thereafter, the vendee demanded a report of title and completion of the contract, and subsequently commenced this proceeding.

At the hearing before the master, Blowitz acknowledged engaging Michaelson as broker to sell the apartment property upon the terms stated in the contract but denied that he authorized the broker to accept less than $2000 earnest money and to act in his behalf after May 21, 1953, or that he had any knowledge that such was taking place. Michaelson verified not only the fact that he had received

no instructions from Blowitz to alter the contract provisions, or to engage in further negotiations after May 21, but also that Blowitz was entirely unaware of these developments. According to his testimony, the proposal to purchase was signed in the vendee's office on May 5 at which time the vendee gave him a check for $500 and a letter of the same date promising to pay the balance of the earnest money upon acceptance of the offer. However, when Michaelson later demanded the additional $1500, the vendee refused to pay until the deal was finally consummated. Michaelson also admitted that the vendor instructed him to call off the deal on May 20 and said that in response thereto he went to the vendee's office on May 21 and there told him the contract had expired and tendered him his $500 earnest money which he refused.

The vendee-appellant admitted that he paid only $500 earnest money but testified this was under a collateral agreement with Michaelson whereby the entire purchase price balance of $39,500 was to have been paid at closing. He also acknowledged the genuineness of the letter dated May 5, which promised the additional earnest money upon acceptance of the offer, but stated that this letter was never delivered to Michaelson and was taken from his desk by the broker without authority and was in fact superseded by the oral collateral agreement. He went on to say that this collateral agreement was set forth in a letter of May 6, addressed to the broker, and that on May 14 he wrote the vendor advising him that financing had been arranged. Both Blowitz and Michaelson denied receiving either of these letters.

The vendee contends that although the contract expressly provided for a $2,000 down payment and mortgage financing within 15 days, these provisions were waived by Michaelson as agent for the vendor, and that Blowitz had no cause to declare the contract at an end because he himself was in default by failing to furnish rental certificates

and a title report. From this he argues that he is entitled to specific performance, reformation of the contract, and subsequent rents; or in the alternative, to receive damages from the other parties. On the other hand, the vendor states that Horan did not comply with the contract provisions and became again interested in the property only after Federal rent controls were removed, while the broker points out that no monetary loss was ever proved.

It is elementary that neither specific performance may be decreed nor forfeiture declared until such time as the moving party has himself complied with all the provisions of the contract, (*Short* v. *Kieffer*, 142 Ill. 258; *Schmidt* v. *Barr*, 333 Ill. 494; *Stagman* v. *Lasson*, 345 Ill. 482; *Johnson* v. *Riedler*, 395 Ill. 412,) and where time is of the essence and both parties are in default upon the stipulated date, each is prevented from enforcing its terms and a rescission occurs. (*Baston* v. *Clifford*, 68 Ill. 67; *Kellogg* v. *Kartte*, 323 Ill. 443; *Bishop* v. *Newton*, 20 Ill. 175.) Such were the facts of the present case, where, by their own admissions, vendee did not deposit sufficient earnest money nor procure mortgage commitments within the 15-day period, and vendor failed to furnish either a title report or rental certificates. Yet the contract expressly provided that time was of the essence and stated: "Seller will allow the buyer fifteen days time in which to secure mortgage financing in the amount of $25,000, said time to run from the date of acceptance. If said financing cannot be obtained, deposit shall be refunded to buyer, and this contract shall become null and void."

Thus, on May 20, 1953, both parties had failed to comply with the contract provisions, and unless such defaults were waived, the contract then expired by its own terms and thereafter became of no effect. (See: *Stagman* v. *Lasson*, 345 Ill. 482; *Depue* v. *Cordell*, 327 Ill. 254; *Mitchell* v. *White*, 295 Ill. 135.) In this regard the vendee contends that Michaelson, acting as agent for the vendor,

excused strict compliance with these provisions by accepting reduced earnest money and by continuing negotiations after the expiration date. With this we cannot agree. Unless otherwise stated, the authority of a real-estate broker extends only to selling upon specified terms, (*Johnson* v. *Riedler*, 395 Ill. 412,) and where one seeks to enlarge such power, the burden is upon him to prove this claim. (*Short* v. *Kieffer*, 142 Ill. 258; *Monson* v. *Kill*, 144 Ill. 248.) There was no showing that Michaelson was invested with extraordinary authority or that the vendee had cause to be misled. It is true the vendor relied upon Michaelson to make preliminary closing arrangements and to later notify vendee of the contract rescission, yet in view of the fact that all of the parties were experienced attorneys, it is doubtful whether any of them were unaware of the limits of the broker's authority. Furthermore, the vendee does not allege that the vendor's defaults were in any way responsible for his delay in acquiring financial backing, and the fact that mortgage commitments were later received without the title reports or rental statements having ever been received, would make it appear that the vendee's default was in no way related to the vendor's default.

Although the vendee argues to the contrary, no forfeiture took place or was ever declared in this case. What occurred, rather, when the vendor tendered back the earnest money upon expiration of the agreed period, was a rescission of the contract. As defined in Black's Law Dictionary, Third Edition, "rescission" is the cancelling of a contract so as to restore the parties to their initial status, whereas, under a forfeiture, the down payment is retained by the one not in default. (See also: *Mourant* v. *Pullman Trust and Savings Bank*, 314 Ill. App. 567, 41 N.E.2d 1006; *Holland* v. *Bradley*, 140 Ore. 258, 12 P.2d 1100.) It may well be that the mortgage commitment limitation was in-

serted for vendee's benefit and therefore subject to his deletion as he suggests, but the fact remains that he made no effort to fulfill or alter the provision during the life of the contract. Once the agreement ceased to exist all rights thereunder were also terminated.

Although the testimony presented conflicted in many details, the master spent considerable time in observing the witnesses and in preparing the findings which were approved by the chancellor. We have long held that such findings are entitled to great consideration and will be disturbed only if manifestly against the weight of the evidence. (*Finley* v. *Felter,* 403 Ill. 372; *Hopkins* v. *Austin State Bank,* 410 Ill. 67.) It is our opinion that the findings here were based upon the evidence and that the vendee was not entitled to the relief prayed for in his amended complaint.

Appellant also contends the chancellor erred in striking a supplemental complaint and that the fees allowed the master are excessive. The supplemental complaint was filed subsequent to the time the pleadings had been settled on the original complaint, as amended, and alleged that the vendee, by reason of the prior pleadings, had become aware of further fraud on the part of the defendants for which he prayed additional monetary damages. We find, however, that the alleged fraud was not pleaded with the particularity and certainty required and thus conclude that the supplemental complaint was properly stricken. (See: *People ex rel. Callahan* v. *Gulf, Mobile and Ohio Railroad Co.* 8 Ill.2d 66; *Anderson* v. *Anderson,* 339 Ill. 400.) On the matter of the master's fees, which rests largely in the discretion of the trial court, we stated in *Handelman* v. *Arquilla,* 407 Ill. 552, that "The sum to be paid should be based upon the time necessarily devoted to the work, the intricacy of the proof, and the complications of fact and law involved in preparing the report of his findings and

conclusions." Applying this principle of measurement to the record at hand, we find no abuse of discretion in the fees allowed.

For the reasons stated, the decree of the superior court of Cook County is affirmed.

*Decree affirmed.*