Crest Finance Company, Inc., Plaintiff-Appellee, v. First State Bank of Westmont, Defendant-Appellant, and Federal Deposit Insurance Corporation, as Receiver for the First State Bank of Westmont, Intervenor-Appellant, v. Leo Niederberger, Defendant-Appellee.

Gen. No. 53,238.

First District, First Division.

April 21, 1969.

Taylor, Miller, Magner, Sprowl & Hutchings, of Chicago (James J. Magner, Michael D. Aufrecht, S. Rex Lewis, General Counsel, Federal Deposit Insurance Corporation, Washington, D. C., and Leslie H. Fisher, Deputy General Counsel, of counsel), for appellant.

Kelly, Kelly and Kelly, of Chicago (John J. Kelly, Sr. and George J. Kelly, of counsel), and Rappaport, Clorfene & Rappaport, of Chicago (Hamilton Clorfene, of counsel), for appellees.

MR. JUSTICE BURMAN delivered the opinion of the court.

This is an appeal by the Federal Deposit Insurance Corporation as Receiver of the First State Bank of Westmont from a decree of the Circuit Court of Cook County entered on April 4, 1968, fixing the Master's fees in the amount of $18,570.65 and assessing all of said fees as costs against the Receivership estate. The appeal is an aftermath of a controversy concerning the ownership of certain securities. The principal case came before this Court as General Number 50,169, Crest Finance Co., Inc. v. First State Bank of Westmont, reported in 66 Ill App2d 364, 214 NE2d 526. The Supreme Court also heard the principal case on leave to appeal granted, and its opinion

is reported in 37 Ill2d 243, 226 NE2d 369. Appellate review of the Master in Chancery's fees was deferred and reserved until the Chancellor's determination of the ownership of the securities could be reviewed.

The record reveals that John J. Kelly, the Master in Chancery to whom the principal case was referred, filed a Master's certificate of fees and charges itemizing the services he rendered and requesting the amount of $33,-500 less the amount of $15,000 previously deposited with him by the parties pursuant to a court order. Both parties objected to the Master's petition for fees as being excessive. Master Kelly then filed a second amended petition in which he stated that the case was a hard-fought one involving numerous legal problems; that the hearings commenced on June 11, 1963, and terminated thirteen months later on July 1, 1964; and that he had served as a Master in Chancery for forty years. Attached to the petition was a certificate of fees and charges which recited, among other things, that the Master had examined the pleadings, heard the witnesses, filed three separate reports, heard arguments, read briefs, conducted thirty-six days of trial and had numerous conferences and phone calls with the respective attorneys. The certificate also included a statement of hours which totalled 200 hours for trial dates and 450 hours for the other above-mentioned services.

On December 11, 1967, a hearing was held before Judge Donald J. O'Brien on the matter of Master Kelly's fees. During the hearing the Master was extensively examined by both counsel for the Receiver and for Crest Finance Company. On April 4, 1968, Judge O'Brien entered his final decree which allowed the Master (1) $970.65 for taking 6471 folios of testimony at the statutory fee of 15¢ per folio of 100 words; (2) an additional sum of $3,600 calculated at the rate of $100 per day for 36 "trial days"; and (3) 350 hours for all the remaining

reports at $40 per hour, or the sum of $14,000. The fees totalled $18,570.65 and were assessed against the Receivership estate.

We were informed during oral argument that the sum of $970.65 allowed as statutory fees is not contested. Both parties, however, maintain that the balance allowed to the Master is excessive and should be reduced. We give our attention first to the allowance of 350 hours at the rate of $40 per hour.

The Receiver contends that the Master's fees in this case are excessive. He argues that the rate of $40 per hour exceeds the rate paid to a chancellor and that, therefore, the rate is above the maximum allowed in Galler v. Galler, 45 Ill App2d 452, 196 NE2d 5. In Galler the Court stated that

> "[t]he correct rule in awarding Master's fees is as simply stated in Kerner v. Peterson, 368 Ill 59, 82, 12 NE2d 884, 894:
>
> " 'The master's position and responsibility are inferior to those of the chancellor and his daily compensation should not be equal to or exceed the chancellor's compensation when reduced to a *per diem* basis.' "

Galler v. Galler, 45 Ill App2d 452, 466–67, 196 NE2d 5, 12–13.

■ We see no good reason to adhere to the formula set down in the Galler decision. We think the better rule to be that announced by the Supreme Court in Horan v. Blowitz, 13 Ill2d 126, 133–134, 148 NE2d 445, 449:

> " 'The sum to be paid [a Master] should be based upon the time necessarily devoted to the work, the intricacy of the proof, and the complications of fact and law involved in preparing the report of his findings and conclusions.' "

465

This principle allows a court the necessary flexibility required to compensate a master for all of the expenses he reasonably incurred during the course of a reference. A maximum limit on compensation, on the other hand, could severely restrict the exercise of the court's discretion in setting a master's fees and could place a court in the position where it would be unable to compensate a master for all of his expenses.

In the case at bar the issue of the Master's fees was strongly contested. The Chancellor required the Master to itemize the time he spent on the case and to be more specific as to his claim for services. This resulted in the filing of two amendments to the Master's petition before the court proceeded with extensive hearings. In his oral decision the Chancellor noted that the Master claimed 450 hours for reviewing the files, studying the transcripts, reviewing the arguments and objections, examining the exhibits, and preparing three reports on different issues. The court observed, however, that the Master was unable to produce definite documentary evidence or testimony as to the actual time spent in the abovementioned activities. The hours spent on the case were, by admission of the Master, only estimates. The Chancellor stated that in the absence of definite documentary evidence he considered the credibility of the testimony, the certificates of the Master, and the exhibits. The court held that it would allow 350 hours as the reasonable time the Master spent on the case. The court then turned to the problem of computing a fair and reasonable rate of pay per hour. The Chancellor said he considered the type of case involved and the nature of the work that was performed in arriving at a satisfactory rate of pay. He also said that he computed the *per diem* compensation of a judge on the basis of $29,000 a year and considered the fact that in addition to a salary, a judge receives pension benefits and other emoluments. The Chancellor concluded that $40 per hour was fair and reasonable.

The allowance of master's fees rests largely in the discretion of the trial court. Brubaker v. Gould, 34 Ill App2d 421, 180 NE2d 873. Applying the rule of Horan to the record at hand, we find no abuse of discretion in the fees allowed. It should also be borne in mind that masters-in-chancery were compelled to maintain a private office of sufficient size to accommodate lawyers, litigants and witnesses at hearings, as well as employing a competent office staff in order to prepare and furnish incidental, but necessary services to the lawyers. These factors are not easily itemized. Furthermore, the cost of these services have gradually increased in this inflationary period. Also, the record indicates that Master Kelly was given a complicated and hotly contested matter involving a large sum of money and numerous exhibits. The Master was required to review a considerable amount of testimony as well as the pertinent law before he completed his three reports. In light of the complex nature of the principal case and considering the higher cost of operating a law office today, particularly in Chicago, we cannot say that the Chancellor abused his discretion in allowing the Master's fees of $40 per hour.

The court also allowed Master Kelly an additional sum of $3,600 calculated at the rate of $100 per day for the 36 trial days. We have concluded that there is no basis in the record for this extra charge and that it is outside the legislative mandate of the statute (Ill Rev Stats 1967, c 53).

Finally, the Receiver contends that the costs of the Master should have been divided between the plaintiff, Crest Finance, and the Receivership estate. The Receiver's contention, however, cannot be sustained on the record. Insofar as it is relevant the applicable statute (Ill Rev Stats 1967, c 33, par 18) provides that the costs in chancery cases are in the discretion of the court—a discretion to be exercised according to equitable rules and

principles. As a general rule unless there is some equitable ground upon which to base an apportionment, the successful party should not be required to pay any portion of the costs. McFail v. Braden, 19 Ill2d 108, 166 NE 2d 46. Since it is undisputed that the decision of the Supreme Court in the principal case was adverse to the position of the Receiver, we see no reason to disturb the finding of the Chancellor in assessing all the fees to the Receiver. We are not unmindful that the Supreme Court, after filing its opinion, retaxed the bill of costs on motion of the Receiver dividing the costs between the plaintiff and the Receiver. This was done under the old rules prevailing during the appeal to this Court and the Supreme Court. We fail to see how this action is applicable to the question of apportioning Master Kelly's fees.

For the reasons assigned that part of the decree of the Circuit Court allowing Master Kelly fees in the amount of $970.65 and of $14,000 (totalling $14,970.65) and assessing it against the receivership estate is affirmed and the fees awarded in the amount of $3,600, is reversed. The cause is remanded for the purpose of modifying the decree to conform with our views.

Affirmed in part and reversed in part, and remanded with directions.

ADESKO, P. J. and MURPHY, J., concur.